## MEYER v. DR. B. L. BULL VEGETABLE MEDICINE CO.

(Circuit Court of Appeals, Seventh Circuit. November 6, 1893.)

### No. 6.

TRADE-MARK—FRAUD—INJUNCTION.

Where complainant has established a trade in a cough mixture known as "Bull's Cough Syrup" and "Dr. Bull's Cough Syrup," and defendant has placed on the market, with the fraudulent purpose of causing it to be mistaken for complainant's article, a cough mixture inclosed in wrappers similar to those used by complainant, and designated as "Dr. B. L. Bull's Celebrated Cough Syrup," complainant is entitled to an injunction restraining defendant not only from using such name on such wrappers, but also from using such name on any kind of wrappers in a manner calculated to deceive the public.

Appeal from the Circuit Court of the United States for the Eastern District of Wisconsin.

In Equity. Bill by Adolph Carl Meyer against the Dr. B. L. Bull Vegetable Medicine Company to enjoin the use of certain trademarks and trade-names, and for an accounting. There was a decree for the complainant, but the decree was not as broad as the prayer of the bill. Complainant appeals. Modified.

Statement by WOODS, Circuit Judge:

The appellant asks us to extend the scope of the decree granted him by the circuit court. The nature of the action is sufficiently shown by the decree entered, whereby it was found and adjudged as follows:

"(1) That since about the year 1855 the complainant and his predecessors in business have been engaged in the manufacture and sale of a certain remedy of the nature of a cough syrup, which remedy has been put up, and is now put up, in packages of a characteristic form and appearance, the said characteristic form and appearance consisting essentially in the fact that the package has been inclosed in a white wrapper, printed in black, like that to the interlocutory decree herein attached, marked 'Complainant's Wrapper.'

"(2) That the complainant's said remedy, in the next preceding paragraph mentioned, was put upon the market by complainant's predecessors and introduced and popularized at great expense under the names of and as 'Bull's

Cough Syrup,' and 'Dr. Bull's Cough Syrup,' by which names it came to be widely known and identified by consumers and the public, and widely and favorably known, and which, before the acts of the defendant in the bill of complaint mentioned, had been used exclusively to designate and identify complainant's said remedy continuously for a period of more than thirty years.

"(3) That by reason of the exertions and outlay of the complainant and his predecessors there was created, and at the time of the acts of the defendant in the bill of complaint mentioned there existed, a great demand for the said remedy under the names of 'Bull's Cough Syrup,' and 'Dr. Bull's Cough Syrup;' and a large and important good will and business of manufacturing and selling the same had been created and existed, which was a source of great profit to the complainant."

(4) That the defendant, in or about the year 1888, knowing of the existence of complainant's said article, and of the names "Bull's Cough Syrup" and "Dr. Bull's Cough Syrup," by which it was and had long been sold and identified, and of the great demand existing for the same, and of the wrapper and package in the first paragraph hereof described, willfully and fraudulently prepared and put upon the market a remedy having the nature of a cough syrup, which was by it, the defendant, put up in imitation of complainant's said article, and marked and designated "Dr. B. L. Bull's Celebrated Cough Syrup," having procured from one Dr. B. L. Bull, who had previously for a short time and to a limited extent prepared and sold a cough syrup inclosed in a yellow wrapper, and marked and designated "Dr. B. L. Bull's Cough Syrup," all the claim and right of said Dr. B. L. Bull to the said recipe, mark, and designation, and inclosed in a white wrapper substantially similar to that of complainant aforesaid, whereby the article thus by the defendant put upon the market was fraudulently given a name and appearance substantially similar to the said remedy of the complainant. A specimen of the wrapper thus by the defendant used, showing the name and other features by it applied as aforesaid, is annexed to the interlocutory decree, marked "Defendant's Wrapper."

(5) That the name "Dr. B. L. Bull's Celebrated Cough Syrup," and the said wrapper, were each and both willfully and fraudulently devised, constructed, and arranged for the purpose of causing the defendant's said article to be mistaken and sold in the market for complainant's article, and for the purpose of creating an unfair competition, and of diverting to the defendant the trade and business of the complainant in the true and genuine "Bull's Cough Syrup," or some part thereof; and that the acts of the defendant in the premises aforesaid were calculated to mislead the public and consumers, and to cause the sale and acceptance of defendant's said article as and for "Bull's Cough Syrup," and as and for complainant's article.

(6) That an injunction issue herein perpetually restraining defendant, its servants and agents, and all persons in privity with it or them, from using, or causing to be used, the words "Dr. Bull's Cough Syrup," or "Dr. Bull's Celebrated Cough Syrup," or "Dr. B. L. Bull's Cough Syrup," or "Dr. B. L. Bull's Celebrated Cough Syrup," upon any label or wrapper for boxes, or any packages of cough syrup resembling or in imitation of the labels or wrappers or trade-mark of the complainant attached to this decree, whether in style of engraving, printing, lettering, or color thereof; and from vending or exposing for sale, or causing to be vended or exposed for sale, any article of cough syrup, having upon the boxes or other packages thereof any such labels or wrappers so made in imitation of or resemblance to the said labels or wrappers of the complainant.

(7) That an injunction issue, perpetually restraining the defendant, its clerks, attorneys, and all in privity with it, from making use, in connection with its said preparation, of the representation of a bull, or any part or parts thereof, as a mark or distinguishing feature or otherwise, upon its wrappers or labels, or as part of any circular or circulars, show card or show cards, advertisement or advertisements by it used, published, or put in circulation.

"(8) That, it appearing that no profits, gains, or advantages have accrued to the defendant by reason of the use of the simulated labels, in the fourth paragraph of this decree referred to, complainant is not entitled to any

recovery except the sum of one hundred and three dollars and ninety-six cents, the costs of the complainant, duly taxed by the clerk of this court; and that the complainant recover of the defendant the said amount, and, in default of payment of the same within ten days, that he have execution therefor."

In lieu of the sixth paragraph, the complainant asked, but the court refused, a substitution of the following: "That an injunction issue herein perpetually restraining the defendant, its servants and agents, and all persons in privity with it, from manufacturing and from selling, and from in any manner offering to sell, and from distributing and from in any way disposing of any remedy or preparation to which shall be applied in any form or manner, as the name and designation thereof, the words, 'Dr. B. L. Bull's Cough Syrup,' or the words, 'Bull's' and 'Cough Syrup,' with or without other words, and from making use of wrappers like that hereto annexed, marked 'Defendant's Wrapper,' and from making use of wrappers substantially like it, and from in any other form or manner using any name or designation which is calculated to cause its article to be known in the market and sold under the name of complainant's article, or as 'Bull's Cough Syrup.' But the writ of injunction thus to be issued shall not (except as to the name or part of the name thereof, as aforesaid) prohibit the defendant from in every fair and lawful manner stating in the wrappers or labels by it used and otherwise that its article is by it manufactured and sold, and from so fairly and lawfully stating any other fact which it may elect or desire to state."

Rowland Cox, for appellant.

C. J. Faber, for appellee.

Before HARLAN, Circuit Justice, and WOODS, Circuit Judge.

WOODS, Circuit Judge, (after stating the facts.)   Our conclusion is that the appellant's motion for a modification of the sixth paragraph of the decree should have been sustained.   As it is, the respondent is restrained from using the words, "Dr. Bull's Cough Syrup," and other forms of expression containing those words, "upon any label or wrappers for boxes or any packages of cough syrup resembling or in imitation of the labels or wrappers or trademarks of the complainant," but not from using the words upon labels or wrappers of any style which could not be said to resemble or be in imitation of the labels or wrappers of the complainant.   The finding of the court is explicit that the defendant devised, constructed, and arranged the name as well as the wrapper of its article for the fraudulent purpose of causing it to be mistaken and sold in the market for complainant's article, and that the tendency of the defendant's acts in the premises was to effect that result. The question presented, therefore, is not one of trade-mark strictly, but of fraud.   Descriptive words, like "cough syrup," and proper names, of course, cannot be appropriated by one to the exclusion of another; nevertheless they may not be used for the purpose of perpetrating a fraud which affects the public.   In Koehler v. Sanders, 122 N. Y. 65, 25 N. E. 235, it is said:

"There are cases where the right to use a name to designate a product is so qualifiedly exclusive that the right to the protection of its use against infringement by others rests upon the ground that such use by them is an untrue or deceptive representation. * * * The application of this principle is not necessarily dependent upon a proprietary right in a name, or the exclusive right to its use; but when another resorts to the use

MEYER v. DR. B. L. BULL VEGETABLE MEDICINE CO.     887

of it fraudulently as an artifice or contrivance to represent his goods or his business as that of a person so previously using it, and to induce the public to so believe, the court may, as against him, afford relief to the party injured."

The same doctrine is recognized in Lawrence Manuf'g Co. v. Tennessee Manuf'g Co., 138 U. S. 537, 11 Sup. Ct. 396; Chemical Co. v. Meyer, 139 U. S. 540, 11 Sup. Ct. 625; Canal Co. v. Clark, 13 Wall. 311. And in Coats v. Thread Co., 149 U. S. 562, 13 Sup. Ct. 966, it is said, upon the authority of a large number of cases cited:

"There can be no question of the soundness of the plaintiff's proposition that, irrespective of a technical question of trade-mark, the defendants have no right to dress their goods up in such manner as to deceive an intending purchaser, and induce him to believe that he is buying those of the plaintiff. Rival manufacturers may lawfully compete for the patronage of the public in the quality and price of their goods, in the beauty and tastefulness of their inclosing packages, in the extent of their advertising, and in the employment of agents; but they have no right by imitative devices to beguile the public into buying their wares under the impression that they are buying those of their rivals."

In Chemical Co. v. Meyer, supra, the plaintiff's preparation was called "Brown's Iron Bitters," and that of the defendant "Brown's Iron Tonic," but, it appearing that no fraud was intended, that the two preparations were "known to the trade and purchasers as distinct and separate," and that the one was never mistaken for the other, an injunction was refused.

While it is the right of every producer or manufacturer to show by some form of statement or legend upon the label or brand of his article where it was made, the names of places being to that extent common property, and incapable of appropriation as trade-marks, yet he may not use the name in a manner and with the intent to make it appear that his article is the same as another, still on the market, which theretofore had been made at the same place, and had been known by the same or by a similar name. In Wetherspoon v. Currie, L. R. 5 H. L. 508, a starch made at Glenfield had come to be known as "Glenfield Starch," and the maker was granted an injunction against the use of the same name by another for his starch, of which the manufacture had been commenced more recently at the same place, and also against the use of the word "Glenfield" in large and dark letters upon the packets in a way intended to cause one article to be mistaken for the other. And in Thompson v. Montgomery, 41 Ch. Div. 35, 50, the proprietors of an ale brewed at Stone, and long known as "Stone Ale," obtained an injunction against the use of that name for another and later product of ale, which was also made at Stone. These cases are cited with approval in Lawrence Manuf'g Co. v. Tennessee Manuf'g Co., supra, and the principle upon which they proceed is equally applicable to corresponding uses of personal names. While the right of no one can be denied to employ his name in connection with his business, or in connection with articles of his own production, so as to show the business or product to be his, yet he should not be allowed to designate his article by his own name in such way as to cause it to be mistaken for the manufacture or goods of another already on the market under the same or a similar name. Whether

it be his name or some other possession, every one, by the familiar maxim, must so use his own as not to injure the possession or right of another.

The appeal is therefore sustained, at the costs of the appellee, with instruction that the motion for a modification of the sixth paragraph of the decree be allowed; and it is so ordered.