STUART v. F. G. STEWART CO. et al.

(Circuit Court of Appeals, Seventh Circuit. January 3, 1899.)

No. 508.

1. TRADE-MARKS—TEST OF INFRINGEMENT—COMPARISON OF WRAPPERS.
Dissimilarities appearing on comparison are not a test of infringement of a trade-mark wrapper, as purchasers have not the advantage of making comparisons, and an article may be advertised and become known by its name, or by certain catchwords easily retained in the memory, an imitation of which may be sufficient to deceive purchasers exercising ordinary care, though the wrappers in other respects may be dissimilar.[1]

2. SAME—UNFAIR COMPETITION—USE OF NAME.
The right of a person to use his own name in trade is qualified by the requirement that it must not be used with a purpose and in a manner to deceive the public as to the identity of his business or products; and, where the name is one which has come to indicate the source of manufacture of a particular article, its use in connection with a similar article

---

[1] As to unfair competition in trade, see note to Scheuer v. Muller, 20 C. C. A. 165; and, supplementary thereto, see note to Lare v. Harper, 30 C. C. A. 376.

placed on the market by another, without anything to indicate the distinction between the two, in itself amounts to an artifice calculated to produce the deception prohibited.[2]

**3. SAME—FRAUDULENT DEVICES.**

Complainant had made and sold for a number of years a medicinal preparation under the name of "Stuart's Dyspepsia Tablets," and by extensive advertising had built up a large trade. After the remedy had become widely known, one of the defendants, whose name was Stewart, organized the corporation defendant, which commenced the manufacture and sale of a preparation under the name of "Dr. Stewart's Dyspepsia Tablets." *Held*, that the question between the parties was not one of trade-marks, merely, depending upon the infringement of complainant's packages and wrappers, but one of fraud, actual or constructive, and that the facts evidenced a design on the part of defendants to appropriate complainant's good will, and to impose their manufacture on the public as that of complainant.

Appeal from the Circuit Court of the United States for the Northern District of Illinois.

This is a bill in equity filed by Frank A. Stuart, the appellant, to restrain the appellees from using the name "Dr. Stewart's Dyspepsia Tablets" upon any remedy manufactured, sold, or offered for sale by them for the cure of dyspepsia. Upon the coming in of the answer the case was referred to a master to report the evidence and his conclusions. He reported in favor of the dismissal of the bill, and upon exceptions filed, and a hearing, a decree was passed sustaining the master's report, and dismissing the bill for want of equity (85 Fed. 778), which decree is brought here for review. The master reported, and the evidence establishes, the following facts: In the year 1891 the appellant commenced the manufacture and sale of a medical compound for the relief of dyspepsia, indigestion, and other bodily evils arising from the improper assimilation of food, prepared in accordance with a certain secret formula of which he is the owner. To identify himself with this medical compound, he selected and applied to it the distinctive name of "Stuart's Dyspepsia Tablets." In order to introduce this remedy to public notice, the appellant advertised largely throughout the United States the supposed merits of his compound, and at great and constantly increasing cost. In the year 1891 he expended $2,000 in advertising, and during the subsequent years increased that amount, until in 1897 he expended between $7,000 and $8,000 monthly. This compound was so advertised under the name of "Stuart's Dyspepsia Tablets," and has become widely known throughout the United States by that name. From small beginnings the business has come to large proportions, so that the sales in the year 1897 aggregated from $15,000 to $20,000 a month, and are constantly increasing. The tablets are commonly contained in an oblong, rectangular box, about an inch and a half deep, two inches wide, and three inches long, of a light-blue color. Each box contains 40 large tablets and 20 small tablets, being different in composition; the small tablets being also further inclosed in a separate bundle. The sides of the box, but not the ends, are practically covered with printed matter in black type. The top bears the words "Stuart's Dyspepsia Tablets," and a fac simile of the signature of the appellant. The boxes are not sealed. The master reports that among dealers in drugs the name "Stuart's Dyspepsia Tablets" is known to refer to the remedy prepared by the appellant. The appellee F. G. Stewart resided in the city of St. Louis prior to September, 1889, and was president and manager of the Stewart Healing-Powder Company, a corporation which manufactured and sold "Stewart's Healing Powder," "Stewart's Stock Remedy," "Stewart's Hoof Oil," "Stewart's Healing Cream," "Stewart's Face Powder," and "Stewart's Headache Cure." In 1883 a formula for the cure of dyspepsia was obtained by that corporation from a Mrs. Lemmon, which

---

[2] As to right to use one's own name, see note to Kathreiner's Maltzkaffee Fabriken mit Beschraenkter Haftung v. Pastor Kneipp Medicine Co., 27 C. C. A. 357.

was tested in 1885, but was never manufactured or placed upon the market until as hereinafter stated. The Stewart Healing-Powder Company was reorganized as the Stewart Chemical Company, with which the appellee F. G. Stewart was connected. That company took the assets of the old company, and continued the business. F. G. Stewart severed his interest with this company the 1st day of November, 1889, coming to Chicago, but purchasing none of the formulas belonging to either of the corporations. It does not appear what the appellee F. G. Stewart did in Chicago before the autumn of 1895 or the spring of 1896. It does not appear that he made or placed upon the market any proprietary medicine. But in May, 1896, he organized a corporation under the name of the F. G. Stewart Company (one of the appellees), which company commenced the manufacture and sale of dyspepsia tablets under the name of "Dr. Stewart's Dyspepsia Tablets." They are put up in boxes two and one-half inches square and three-quarters of an inch in depth. The boxes are indigo blue in color, and are covered with a sealed wrapper of glazed paper of the same color. On the top and at the bottom of the wrapper are broad circles in silver, inclosing printed matter, also in silver. On the sides of the wrapper there is also printed matter in silver. Inside the broad circle on the top of the box are the words in large print in silver, "Dr. Stewart's Dyspepsia Tablets, 50c." The box is less highly glazed than the wrapper, but contains the same printing, in the same color and form, and is of the same indigo blue color. At the time of so engaging in this business the appellees knew of the business of the appellant, knew of the name by which his tablets were known, and almost at the very outset of the business were cautioned by wholesale dealers that they were encroaching upon the rights of the appellant. The master found, among other things, "that the similarity in sound between 'Stuart's Dyspepsia Tablets' and 'Dr. Stewart's Dyspepsia Tablets' is such as would be likely to deceive a careless person, and even an ordinarily careful person, but that the appearance of the respective packages is such that no reasonably careful person could mistake one for the other. They differ materially in size and shape, and most radically in color, and in the style, color, and general appearance of the printed matter. Besides the particulars enumerated, another important difference, and one which is calculated to attract immediate attention, is in the fact that the defendant's packages are covered with a sealed wrapper, while the complainant's boxes have no wrapper at all, and are not sealed in any way. Other respects in which the defendant's packages differ from the complainant's are in the presence of the abbreviation 'Dr.,' the absence of the fac simile of signature, and the different spelling of the name 'Stewart.'"

A. W. Underwood (James Jay Sheridan and Frank F. Reed, of counsel), for appellant.

B. L. Lee, for appellees.

Before WOODS, JENKINS, and SHOWALTER, Circuit Judges.

JENKINS, Circuit Judge, upon this statement of the facts, delivered the opinion of the court.

Both the court below and the master treated this case as a trademark case, pure and simple. We are not prepared to say, and it is not necessary to say, that upon that postulate this decree could be sustained. It is a simple matter, upon comparison of the two trade-mark wrappers, to observe dissimilarities, but that is not the test of infringement. The purchaser has not the advantage of comparison. We observed in Pillsbury v. Flour-Mills Co., 24 U. S. App. 395, 407, 12 C. C. A. 432, 438, and 64 Fed. 841, 847:

"A specific article of approved excellence comes to be known by certain catchwords easily retained in memory, or by a certain picture which the eye readily recognizes. The purchaser is required only to use that care which persons ordinarily exercise under like circumstances. He is not bound to study or reflect. He acts upon the moment. He is without the opportunity of comparison. It is only when the difference is so gross that no sensible

man acting on the instant would be deceived that it can be said that the purchaser ought not to be protected from imposition. Indeed, some cases have gone to the length of declaring that the purchaser has a right to be careless, and that his want of caution in inspecting brands of goods with which he supposes himself to be familiar ought not to be allowed to uphold a simulation of a brand that is designed to work fraud upon the public. However that may be, the imitation need only be slight, if it attaches to what is most salient; for the usual inattention of a purchaser renders a good will precarious, if exposed to imposition."

Here the purchaser, desiring the remedy of the appellant, to which his attention had been attracted by the advertisement, or which possibly he had before purchased, knew the remedy as "Stuart's Dyspepsia Tablets," and that it was in a blue wrapper. The name caught the ear; the color caught the eye. When the remedy of the appellees is presented to him, the name and color are present to him. We think it would require more than the care ordinarily used under like circumstances to expect that such a purchaser would deliberate over, or be warned by, the addition of the prefix "Dr.," or to expect that his artistic taste should be cultivated to a degree to detect the difference between a light blue and an indigo blue in the hurried purchase of a package of this remedy. We forbear, however, further comment upon this branch of the case.

We are of opinion that the court below and the master misapprehended the true ground upon which judgment should proceed. The cause should properly be determined upon the question of fraud, actual or constructive. We have had occasion more than once to pass upon the question of the right of one to use his own name, when thereby it is sought to encroach upon the rights of another. In Meyer v. Medicine Co., 18 U. S. App. 372, 379, 7 C. C. A. 558, 566, and 58 Fed. 884, 887, we observed:

"While the right can be denied to no one to employ his name in connection with his business, or in connection with articles of his own production, so as to show the business or product to be his, yet he should not be allowed to designate his article by his own name in such way as to cause it to be mistaken for the manufacture or goods of another already on the market under the same or a similar name. Whether it be his name or some other possession, every one, by the familiar maxim, must so use his own as not to injure the possession or rights of another."

This principle was also asserted in Pillsbury v. Flour-Mills Co., supra, and is the settled doctrine of this court, sustained, as we conceive, by the great weight of authority in this country and in England. It is needless to assemble the authorities on that subject. We may refer, however, to Wilson v. Garrett, 47 U. S. App. 250, 24 C. C. A. 173, and 78 Fed. 472; Walter Baker & Co. v. Sanders (1), 51 U. S. App. 421, 26 C. C. A. 220, and 80 Fed. 889; Singer Mfg. Co. v. June Mfg. Co., 163 U. S., 169, 187, 188, 16 Sup. Ct. 1002, 1009. In the latter case the principle is thus stated:

"This fact is fully recognized by the well-settled doctrine which holds that 'every one has the absolute right to use his own name honestly in his own business, even though he may thereby incidentally interfere with and injure the business of another having the same name. In such case the inconvenience or loss to which those having a common right are subjected is damnum absque injuria. But although he may thus use his name, he cannot resort to any artifice or do any act calculated to mislead the public as to the identity

of the business firm or establishment, or of the article produced by them, and thus produce injury to the other beyond tnat which results from the similarity of names.' Cement Co. v. Le Page, 147 Mass. 206, 208, 17 N. E. 304; Pillsbury v. Flour-Mills Co., 24 U. S. App. 395, 404, 12 C. C. A. 432, 437, and 64 Fed. 841, 846; Croft v. Day, 7 Beav. 84; Holloway v. Holloway, 13 Beav. 209; Wotherspoon v. Currie, L. R. 5 H. L. 508; Montgomery v. Thompson [1891] App. Cas. 217; Howard v. Henriques, 3 Sandf. 725; Meneely v. Meneely, 62 N. Y. 427; Lawrence Mfg. Co. v. Tennessee Mfg. Co., 138 U. S. 537, 11 Sup. Ct. 396; Chemical Co. v. Meyer, 139 U. S. 540, 11 Sup. Ct. 625; Coats v. Thread Co., 149 U. S. 562, 13 Sup. Ct. 966. Where the name is one which has previously thereto come to indicate the source of manufacture of particular devices, the use of such name by another, unaccompanied with any precaution or indication, in itself amounts to an artifice calculated to produce the deception alluded to in the foregoing adjudications. Indeed, the enforcement of the right of the public to use a generic name, dedicated as the results of a monopoly, has always, where the facts required it, gone hand in hand with the necessary regulation to make it accord with the private property of others, and the requirements of public policy. The courts have always, in every such case, without exception, treated the one as the correlative or resultant of the other."

It only remains to ascertain if the principles declared apply to the facts of this case. The appellee, F. G. Stewart, prior to 1889 had been engaged at St. Louis in the manufacture and sale of certain proprietary medicines, among which was not dyspepsia tablets. This business was carried on by certain corporations in which he was interested. He claimed in 1883 to have been given a formula for a remedy for indigestion, which he tested, but which was not manufactured or sold by either of the St. Louis corporations with which he was connected. That formula, as he himself states, belonged to the corporation, and not to himself individually, and when he severed his connection with those corporations the rightful ownership of the formula remained with them, and did not pass to him. He removed to Chicago in 1889, and for nearly seven years, so far as the record discloses, did nothing in the way of manufacturing or selling proprietary medicines. Meantime the appellant, through an expenditure of more than $100,000 in advertising, had built up a large trade in "Stuart's Dyspepsia Tablets." Here was the opportunity to appropriate the good will of a business belonging to another, and F. G. Stewart organized a corporation bearing his name for the express purpose of putting upon the market a dyspepsia tablet of exactly the same name, so far as sound is concerned, as that manufactured by the appellant. Almost in his first attempt to market his wares he was advised by dealers that he was encroaching upon the rights of the appellant. It is manifest that he was. It needs no argument to show that these names are idem sonans, and that the use of both of them in connection with dyspepsia tablets must cause great confusion in the sale, and great wrong to purchasers. It is clear to us that the appellee F. G. Stewart and his corporation so understood and so designed. They knew of the extensive advertisement which the appellant indulged with respect to his goods. They knew that an immense trade had in consequence been built up, and a large demand existed for "Stuart's Dyspepsia Tablets." They sought to appropriate to themselves that good will, and to impose upon the public their manufacture as the goods of the appellant. Stewart justified himself to the wholesale dealers who cautioned him by the claim that he used

his own name, and that he had a right to use it as he would.    Therein he was in error.    A man may not use his own name to accomplish a fraud, designed or constructive.    The case is too plain for further comment.    The decree will be reversed, and the cause remanded to the court below, with directions to enter a decree in favor of the complainant (appellant here) pursuant to the prayer of the bill.

SHOWALTER, Circuit Judge, sat at the hearing of this case, concurred in the decision, but died before the preparation of the opinion.