## CHICKERING et al. v. CHICKERING & SONS.

(Circuit Court of Appeals, Seventh Circuit. January 6, 1903.)

### No. 921.

**1. UNFAIR COMPETITION—IDENTITY OF NAMES.**

While every man has the right to use his own name honestly and fairly in his own business, and, so using it, is not responsible for resulting confusion with the goods of another of the same name, on the other hand he must so use his name as not to unnecessarily injure another, nor produce greater confusion than would naturally result from the mere similarity or identity of name. He may not dress his goods in a manner calculated to enable them to be palmed off on purchasers as those of another.

**2. PRELIMINARY INJUNCTION—REVIEW ON APPEAL.**

Where the ex parte proofs produced by the parties on the hearing of a motion for a preliminary injunction are conflicting, the case will not be reviewed on the merits on an appeal from the order entered, but such order will be affirmed unless it clearly appears that the court below improperly exercised its discretion.

¶ 1. Unfair competition, see notes to Scheuer v. Muller, 20 C. C. A. 165; Lare v. Harper & Bros., 30 C. C. A. 376.

**8. UNFAIR COMPETITION—PRELIMINARY INJUNCTION—GROUNDS.**

Complainant and its predecessors in interest since 1823 have manufactured pianos at Boston, Mass., which, since 1840, have been marked "Chickering," and have become widely known by that name, and as the product of such makers. For 50 years such pianos have been made by a firm and succeeding corporations under the name of "Chickering & Sons." Defendants, whose name was Chickering, in 1898 organized a corporation under the name of "Chickering Bros.," and engaged in the manufacture of pianos in Chicago, which were marked on the fall board with the name "Chickering Bros." in letters similar to those used on complainant's instruments. They also issued advertising matter, which, while containing no untruthful statement, dwelt upon the fact that they were the sole living male representatives of the family which originated the Chickering pianos, and which tended to convey to the public the idea that their pianos were the same as those which had long been known by that name. *Held,* that such facts were sufficient to warrant the granting of a preliminary injunction against the continuance of such acts as unfair competition.

Appeal from the Circuit Court of the United States for the Northern District of Illinois.

In the year 1823, Jonas Chickering, at Boston, Mass., commenced the manufacture of pianos. As early as 1844 he adopted the word "Chickering" as the distinguishing name of pianos of his manufacture, and from that time to the present pianos manufactured by him and by those associated in business with him and by his successors in business have been continuously marked on the fall board of the piano with the name "Chickering" in the old English style of lettering, surrounded by scroll work, with the words underneath in clear type, "Boston, U. S. A."; and the name "Chickering" has become associated in the public mind as the name of the piano made at the factory in Boston, and the name has acquired a secondary signification indicating that particular make of piano, and the name is of great value. In the year 1852 his three sons, Thomas E., C. Frank, and George H. Chickering, became associated with him in business under the firm name of Chickering & Sons. Jonas Chickering died in December, 1853. The business was continued by the surviving members of the firm under the same name. One of the sons died in 1871, and the surviving sons in the year 1886 incorporated the business according to the laws of New York under the corporate name of Chickering & Sons. This incorporation was had under the laws of the state of New York, because it was desired to preserve the name "Chickering & Sons," and under the law of Massachusetts, as then existing, that name could not be taken by a corporation. The business and manufacture, however, have always been located at Boston. Of this corporation one son became president and the other treasurer, and so continued until the year 1891, when one of the sons died. The survivor, George H. Chickering, thereupon became president of the company, and a Mr. Foster the treasurer; Mr. Chickering having $300,000 and Mr. Foster $50,000 of the total capital of $600,000. How much of the capital stock continued to be held by the estate of the deceased son does not appear. Mr. George H. Chickering died in the year 1899, and was succeeded as president of the corporation by Mr. Foster, the former holdings of Mr. George H. Chickering being held by trustees for the benefit of the family. In 1901, under an act of the commonwealth of Massachusetts, then recently passed, the parties in interest formed a corporation under the laws of that state under the corporate name of "Chickering & Sons," which corporation took over the business from the New York corporation, and has since continued it. The factory building now occupied by the complainant is the same factory building used since the year 1853, and was occupied by the Chickerings without interruption until the formation of the corporation, which continued to occupy it and now occupies it, employing 400 men in the manufacture of pianos, the annual output being 3,500 in number. In the year 1867, the firm of Chickering & Sons was awarded by the French government the first prize for pianos exhibited at the World's Exposition of that year in Paris, and the cross of the Legion of

Honor was granted as a reward of merit. This cross had on one side an eagle and on the reverse side the head of Napoleon surrounded with a chaplet of laurel. Chickering & Sons, firm and corporation, have, since the conferring of the cross, displayed a representation of it in their business. In 1897 it was registered by them under the laws of the United States as a trademark for use in connection with the manufacture and sale of pianos. It has since been affixed to the pianos manufactured by them, and been used in their letter heads and general publications. The appellants, Clifford C. and Frederick W. Chickering, are great-nephews of Jonas Chickering, and were employed by the firm of Chickering & Sons in different ways between the years 1883 and 1890. In 1892 they started business in Chicago under the firm name of "Chickering Bros.," engaging in the piano business, and sold pianos, the parts for which, at the beginning of the business, were made by other concerns and assembled by Chickering Bros. The business conducted was a small one, and in 1895 Frederick W. Chickering withdrew because the business was insufficient to support the two brothers, Clifford C. continuing the business alone under the name of Chickering Bros. until 1902, just prior to the commencement of this suit, when Clifford C. Chickering, Frederick W. Chickering, and L. P. Chickering (the last-named being the wife of Clifford C. Chickering), incorporated under the name of "Chickering Bros." for the purpose of continuing the manufacture of pianos. Their pianos were marked upon the fall board "Chickering Bros." in old English style of lettering, the word "Chicago" underneath. Their letter heads and certain of their advertising matter had the impress of a Maltese cross, with a head in the center, and in some of them the Maltese cross had an eagle in the center. When that was adopted does not definitely appear. The letter heads also contained underneath the cross the words, "Manufacturers of Chickering Bros. 'Clifford' Pianos." Whether, prior to the death of Mr. George H. Chickering, in 1899, the appellants made or sold pianos otherwise than as "Clifford," does not definitely appear by the record. Their sale as "Clifford" pianos was discontinued in the year 1898. On the back of their piano, in a recessed place, was posted a notice as follows:

"Special Notice: In order to prevent confusion, and possible misrepresentation, we wish to state that the firm of Chickering Bros. has no connection whatever in a business sense with the eastern company of the same name. Our pianos are made in Chicago, after our own scales, patterns, and methods of construction, and we place them on the market with confidence, relying on the discernment of the public and the trade to accord them that pre-eminence which their merits deserve."

After the death of Mr. George H. Chickering, in 1899, they put forth in their catalogues and other printed matter statements that they were not only related to the Boston Chickerings, but were the nearest of kin in the male line; that they received 10 years' practical training in their factory, and "that since the death of George H. Chickering (the last of the firm of Chickering & Sons) we are now the only Chickerings making a piano." They also put out a booklet giving "a sketch of the Chickering family and their famous piano," which contains a sketch of both branches of the Chickering family, a history of the career of Jonas Chickering, and of the appellants' connection with that business before they engaged in business in Chicago, and concluding with the statement: "Jonas Chickering and his sons have made the name 'Chickering' famous in connection with the manufacture of pianos. By right of purchase this name will continue to be used on the Boston piano, but by reason of their kinship, and because of their long practical training under the 'Chickering System,' the fact is properly advanced that 'the only piano made by a Chickering' is now made in Chicago by Chickering Bros." The expression, "The only piano made by a Chickering" is also conspicuously cast into the frame of their piano, and is displayed on the front and back and most of the pages of their catalogue. These changes took place in 1900, subsequent to the death of George H. Chickering.

The cause came before the court below upon the motion for a preliminary injunction, and at the hearing a large number of affidavits were presented

on each side with reference to false statements put forth by those who had for sale pianos of the appellants, representing them to be the original Chickering pianos of Boston; and there was much dispute with respect to the responsibility of the appellants therefor, as well as upon the question of actual deception. The court entered an order restraining and enjoining the appellants as follows: "(1) From using as the name of a piano the word 'Chickering,' either alone or in connection with other words or letters. (2) From using the name 'Chickering Bros.,' or the name 'Chickering' alone, or with any other word or words or letters, to designate the name of a corporation manufacturing or dealing in pianos. (3) From using on pianos the word 'Chickering' alone, or with other words or letters, to designate the maker or makers thereof, without displaying in connection therewith, plainly and in a prominent manner, a statement that the defendants are in no way connected with Chickering & Sons, of Boston, Mass., and that the defendants' pianos are not the 'original Chickering' pianos, or by some other means advise the ordinary observer of the fact that pianos of the defendants' manufacture are not the product of the complainant. (4) From using in connection with the manufacture or sale of pianos in any form or manner, whether in circulars, catalogues, letter heads, advertisements, labels, or otherwise the name 'Chickering' alone, or with other words or letters to designate the maker or makers of such pianos, without displaying in connection therewith plainly and in a prominent manner a statement that the defendants are in no way connected with Chickering & Sons of Boston, Mass., and that the defendants' pianos are not the 'original Chickering' pianos, or by some other means advise the ordinary observer of the fact that pianos of the defendants' manufacture are not the product of the complainant. (5) From making use of on or in connection with the manufacture or sale of pianos the statement, 'The only piano made by a Chickering,' or any statement similar thereto, or from stamping, stenciling, or impressing upon their said pianos said statement, or any statement similar thereto. (6) From using in connection with the manufacture or sale of pianos the maltese cross known as the 'Cross of the Legion of Honor,' in any form or manner, whether by marks upon their said pianos or in circulars, catalogues, letter heads, advertisements, labels, or otherwise. (7) From exhibiting or distributing the booklet or pamphlet entitled 'A sketch of the Chickering Family and Their Famous Piano,' a copy of which is 'Exhibit F' of the bill of complaint filed herein. (8) From doing any and all acts and from making any and all representations which are calculated to induce the public to believe that the pianos manufactured or sold by the defendants, or any of them, are genuine Chickering pianos, or the product of the original Chickering Piano Manufacturing Concern, or that the defendants, or any of them, are in any way or manner the successors to or connected with the original Chickering Piano Manufacturing Concern."

The appellants assign for error: "(1) That the court erred in holding that the defendants were engaged in unfair and fraudulent competition in trade with complainant as alleged in the bill of complaint; (2) in holding that defendants were infringing any valid trade-mark of complainant; (3) in granting the injunction order appealed from against defendants; (4) in granting any injunction order or other relief against defendants; (5) in not overruling complainant's motion for a preliminary injunction against defendants." The restraining order is brought here for review.

Edward Rector, for appellant.
Robert S. Gorham and George A. Carpenter, for appellee.

Before JENKINS, GROSSCUP, and BAKER, Circuit Judges.

JENKINS, Circuit Judge (after stating the facts as above). Undoubtedly, one cannot have a technical trade-mark in his own name, or acquire exclusive property right in it as against others of the same name. Undoubtedly, every man has the right to use his own name honestly and fairly in his own business, and, so using it, is not respon-

sible for resulting confusion with the goods of another of the same name, nor liable for any damage resulting from such confusion. On the other hand, every man must so use his name as not unnecessarily to injure another, nor produce greater confusion than would naturally result from mere similarity or identity of name. He may not dress his goods in a way calculated to confuse them with, and enable them to be palmed off as, the goods of another. Chemical Co. v. Meyer, 139 U. S. 540, 11 Sup. Ct. 625, 35 L. Ed. 247; Singer. Mfg. Co. v. June Mfg. Co., 163 U. S. 169, 16 Sup. Ct. 1002, 41 L. Ed. 118; Elgin Nat. Watch Co. v. Illinois Watch Case Co., 179 U. S. 665, 21 Sup. Ct. 270, 45 L. Ed. 365; Meyer v. Medicine Co., 58 Fed. 884, 7 C. C. A. 558; Pillsbury v. Flour Mills Co., 64 Fed. 841, 12 C. C. A. 432; Flour Mills Co. v. Eagle, 86 Fed. 608, 30 C. C. A. 386, 41 L. R. A. 162; Stuart v. F. G. Stewart Co., 91 Fed. 243, 33 C. C. A. 480; Chas. E. Hires Co. v. Consumers Co., 100 Fed. 809, 41 C. C. A. 71; Peck Brothers & Co. v. Peck Bros. Co., 113 Fed. 291, 51 C. C. A. 251.

The question for consideration is whether the court below improperly exercised its discretionary power in respect of issuing an injunction pendente lite. Unless it clearly appears that it has so done, the order should be affirmed. It is not desirable—if it be entirely proper—that we should at this time review the merits of this controversy. The conflicting ex parte statements produced by the parties leave the case in some doubt with respect to the responsibility of the appellants for false representation by the sales agents of the appellants. It is better to reserve judgment upon disputed questions of fact until the cause shall come again to us upon the final hearing, when the evidence may be scrutinized in the light of intelligent cross-examination. We content ourselves, therefore, for the present, with a consideration of the case upon certain undisputed facts. The Chickering piano, as the product of the Boston factory, had become known certainly throughout the United States, if not in foreign lands. It had attained a high reputation for excellence. It was known by the name "Chickering," and that name was to the public an assurance of excellence in tone and in manufacture. The appellants had a right to associate themselves in business under the name of "Chickering Bros." They had also the right to engage in the manufacture of pianos. But, well knowing of the existence of the Chickering piano, it was their duty so to indicate the piano made by them that it should not be mistaken for the "Chickering" piano known to the world. They have not done this. They have used the same old English style of lettering upon the fall board that is used upon the "Chickering" piano. It is no excuse to say that most manufactures of pianos use that style of lettering. The duty was upon them, under the circumstances, to distinguish their pianos from the "Chickering" pianos, and they cannot plead, in avoidance of that duty, that others of different names used that style of lettering. Their duty was to distinguish, not to imitate; and the use of the word "Chickering" in the same style of lettering tends to deceive. The assertion of the appellants in their publications that they "make the only piano made by a Chickering" is also deceiving, and its adoption immediately after

the death of Mr. George H. Chickering might well induce the belief that its use was intentionally designed to deceive, and to acquire for themselves the trade and good will of the appellee. While the truth of the statement may be conceded, it is, as stated, only a half truth, conveying to the public the idea that the "Chickering" piano known to the public was made by the appellants, and not by the appellee. It is not needful at present to pursue the subject. We prefer to reserve judgment until the coming in of proofs. For the present we cannot say that the discretion of the court below was improperly exercised in restraining the acts complained of. It may be that the order is in some respects too broad in its terms, particularly the second paragraph of it; but the assignment of errors goes to the whole order, and not to any particular paragraph of it, so that we are not called upon to scrutinize language unchallenged by the parties complaining. It is within the power of the court below at any time to modify the order if any of its restraints be unwarranted.

The order is affirmed.