### GARCIA et al. v. GARCIA.

(District Court, E. D. Wisconsin. July 9, 1912.)

1. TRADE-MARKS AND TRADE-NAMES (§ 59*)—INFRINGEMENT OF TRADE-NAME.
   Two brothers manufacturing well-known brands of cigars under the trade-name "F. Garcia & Bros." are entitled to enjoin defendant, Frank Garcia, a sole trader, from using the names "F. Garcia & Bros.," "Garcia Bros.," and any like combination of the name "Garcia" with "Bros.," either as a trade or business name, or as designating cigars not of complainants' manufacture, where it appears that complainants' name has been used on defendant's boxes in such manner as to tend to deceive the public, though defendant's brothers, as his predecessors, used the name "Garcia Bros.";· complainants having a superior right as against them.

   [Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent. Dig. §§ 68–72; Dec. Dig. § 59.*]

2. TRADE-MARKS AND TRADE-NAMES (§ 66*)—INFRINGEMENT OF TRADE-NAME —RIGHT TO ENJOIN.
   Complainants' right to enjoin infringement of their trade-names is unaffected by the amount of business done by defendant.

   [Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Dec. Dig. § 66.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

In Equity. Bill by Francisco Garcia and another, partners as F. Garcia & Bros., against Frank Garcia, trading as F. Garcia & Bros. Decree for complainants.

In June, 1886, Jose, Francisco, and Antonio Garcia, brothers, associated as partners under the firm name and style of "F. Garcia & Bros." in the manufacture of cigars, and so continued until about the year 1900 or 1901, when Antonio retired from the firm; but, with the exception of such change, the business so established had been continuously conducted under the name and style of "F. Garcia & Bros." The retirement of the one brother caused no change in the assets, business, good will, or property of the business, and the complainants, Jose and Francisco Garcia, are the possessors and owners of all of the same.

From the beginning at the date mentioned, the complainants have built up a very large business and good will, increasing from year to year, throughout every state of the United States excepting three. The firm, its business and products, have been extensively advertised and the goods marketed at a cost in excess of $100,000. As a result thereof they have become well known throughout the country, and particularly in certain sections, the northwest, and in the state of Wisconsin, in which latter state the goods have been sold since 1890, principally in the cities of Milwaukee, Madison, and Racine. The business office of the firm during all these years has been located at No. 22 Warren street in the city of New York. Its cigar manufactories are located in Tampa, Fla., and in Havana, Cuba. Its cigars have been marketed and sold under various names or brands; there being manufactured at Tampa nine, and at Havana two, different brands. Such cigars are packed in boxes of 25, 50, or 100, as the case may be; the boxes having different marks, labels, and edgings for the different brands. At Tampa, Fla., the complainants have manufactured one of their principal brands, which is known and called "F. Garcia & Bros." On the boxes of all the brands excepting one, the name "F. Garcia & Bros." has always appeared prominently and usually in several different places upon the boxes. In addition to using the different names, all of the brands of complainants' cigars have been identified by placing the firm name "F. Garcia & Bros." on what is called the rear panel or "back strip" of each cigar box. This marking is printed on white or light colored paper pasted on the inside of the rear panel, or "back strip." It is in red ink; the type being large so as to readily attract the eye. This marking has been considered and is used by the complainants as one of the principal features of identification of their goods, and to distinguish them from the goods of other manufacturers.

The complainants' firm was the first in the cigar business to use the name "Garcia" coupled with the word "Bros." Customers desiring cigars of complainants' make call for them under the name "Garcia & Bros. cigars," "F. Garcia & Bros. cigars," "Garcia Brothers' cigars, and sometimes "Garcia." These names, when used in connection with cigars, have become synonymous with the products of complainants' manufacture and none others, and they are known and understood in the trade by dealers and customers to refer to cigars manufactured by the complainants. Dealers furnish such cigars and none others in response to demands under such name, and customers use such names to indicate that cigars desired to be purchased are those of the complainants' manufacture.

In or about the year 1905, the defendant, Frank Garcia, began business in the city of Milwaukee with no other person associated with him. Previous to this time he had been a cigar maker in Chicago, New York, Tampa, Jacksonville, London, Canada, and Milwaukee. He had known of the firm of F. Garcia & Bros., the complainants, ever since he came to this country in 1893, and in fact had been employed as a cigar maker by them in their factory at Tampa. At some date not precisely fixed, but probably in about 1897, the defendant's three brothers, Arthur, Manuel, and Raymond Garcia, began the manufacture of cigars in Milwaukee under the name of "A. Garcia Brothers." Such business was continued until about the year 1905, when the defendant bought out the brothers, and thereafter, down to the commencement of the suit, conducted the business alone; but, immediately upon buying out the

brothers, the defendant changed the trade name and style of the business to "F. Garcia & Bros." Although no one has ever been associated with the defendant, he has used the name "Garcia Bros." "F. Garcia & Bros.," as he states, "to make an impression for the business."

It appears that the defendant has put upon the market a brand of cigars under the name of "Garcia Bros."; that he has used as a trade and business name, affixing the same to boxes containing his cigars, such names as "Garcia Bros.," "F. Garcia & Bros.," and "F. Garcia Bros. Co.," which various uses of names are not explained, except as last above stated. It appears that the defendant's factory license stands in and was taken out under his individual name, Frank Garcia. It also appears that he has placed upon the rear panel or "back strip" on the inside of cigar boxes the name "F. Garcia & Bros." in a type of substantially the same size, color, and appearance as that used by the complainants in boxes containing cigars of their manufacture.

The defendant's business aggregates 150,000 cigars annually, which are sold principally in Milwaukee and in some other cities in this district.

The complainants have filed their bill, praying for an injunction restraining the defendant from using the name "F. Garcia & Bros.," "Garcia Bros.," and any like combination of the name "Garcia" with "Bros.," either as a trade or business name or as designating cigars not of complainants' manufacture.

The facts above recited appear from the pleadings, testimony, and exhibits on final hearing.

Steuart & Steuart, of New York City, and Bloodgood, Kemper & Bloodgood, of Milwaukee, Wis., for complainants.

H. L. Eaton, of Milwaukee, Wis., for defendant.

GEIGER, District Judge (after stating the facts as above). [1] The complainants do not seek to restrain the defendant from using his own name in the conduct of his business. But the claim is made that the name of "F. Garcia & Bros.," as well as "Garcia Bros." or "F. Garcia Brothers," being not only complainants' trade and business name, and truly descriptive of their copartnership relation, but having also a secondary signification in being descriptive of the kind and quality of goods manufactured by them, the defendant cannot adopt such name or names as a garb of his own business or product, and then compete with complainants.

The legal principles governing the situation presented have been applied so frequently in leading cases within this circuit that extended discussion is unnecessary. Such are the cases of Pillsbury v. Flour Mills Co., 64 Fed. 841, 12 C. C. A. 432; Meyer v. Medicine Co., 58 Fed. 884, 7 C. C. A. 558; Stuart v. F. G. Stewart Co., 91 Fed. 243, 33 C. C. A. 480; Kathreiner's Malzkaffee Fabriken mit Beschraenkter Haftung v. Pastor Kneipp Med. Co., 82 Fed. 321, 27 C. C. A. 351; Peck Bros. & Co. v. Peck Bros. Co., 113 Fed. 291, 51 C. C. A. 251, 62 L. R. A. 81; Chickering v. Chickering & Sons, 120 Fed. 69, 50 C. C. A. 475; Charles E. Hires Co. v. Consumers' Co., 100 Fed. 809, 41 C. C. A. 71.

In Meyer v. Medicine Co., the doctrine is thus stated:

"While the right can be denied to no one to employ his name in connection with his business, or in connection with articles of his own production, so as to show the business or product to be his, yet he should not be allowed to designate his article by his own name in such a way as to cause it to be mistaken for the manufacture or goods of another already on the market under the same or a similar name. Whether it be his name

or some other possession, every one, by the familiar maxim, must so use his own as not to injure the possession or rights of another."

And in Singer Mfg. Co. v. June Mfg. Co., 163 U. S. 169, 16 Sup. Ct. 1002, 41 L. Ed. 118, which is cited in Stuart v. Stewart, supra, it is more fully stated as follows:

"This fact is fully recognized by the well-settled doctrine which holds that 'every one has the absolute right to use his own name honestly in his own business, even though he may thereby incidentally interfere with and injure the business of another having the same name. In such case the inconvenience or loss to which those having a common right are subjected is damnum absque injuria. But although he may thus use his name, he cannot resort to any artifice or do any act calculated to mislead the public as to the identity of the business firm or establishment, or of the article produced by them, and thus produce injury to the other beyond that which results from the similarity of names.' (Citing cases.) Where the name is one which has previously thereto come to indicate the source of manufacture of particular devices, the use of such name by another, unaccompanied with any precaution or indication, in itself amounts to an artifice calculated to produce the deception alluded to in the foregoing adjudications. Indeed, the enforcement of the right of the public to use a generic name, dedicated as the results of a monopoly, has always, where the facts required it, gone hand in hand with the necessary regulation to make it accord with the private property of others, and the requirements of public policy. The courts have always, in every such case, without exception, treated the one as the correlative or resultant of the other."

The defendant being a sole trader, there can be no pretense that any of the names which contain the combination of "Garcia," or "F. Garcia," with the word "Bros." or "Brothers," is truly descriptive of his business, or that it is his true name. The evidence shows beyond controversy the facts claimed by the complainants, that the names "F. Garcia & Bros.," "Garcia Brothers," "F. Garcia Brothers," and the like, had become known throughout the United States as the complainants' trade and businesss name, and as applied certainly to them and cigars of their manufacture; that, of these names, "F. Garcia & Bros." had been used and applied by the complainants as a brand name; and that it was so known in the trade as designating such particular brand of cigars of the complainants' manufacture. It is also very clear that the predecessors of the defendant and the defendant adopted and used one or more of these names after the complainants had adopted the one name as their firm and business name, and after all of such names had become known as designating, either generally the cigars of complainants' manufacture, or particularly a brand of cigars of their manufacture which was made and marketed under such particular name.

Under the principles of the cases above cited, there can be no doubt as to the necessary conclusion to be reached. The adoption by the defendant of the identical names which the complainants had adopted as their true trade-name, and which had come to designate their product, would alone entitle the complainants to relief. Such name or names had become the means of describing the goods manufactured by the complainants, both by those who dealt in them and those who consumed them; and, to use the language of Chickering v. Chickering & Sons, supra, "that name was to the public an assurance of

excellence * * * in manufacture." The testimony here shows something more: From the fact that the defendant knew of complainants' name and its secondary use, his adoption of that name, or of the name "Garcia" coupled with "Bros." in respect to his own trade situation, in effect asserted a falsehood. His affixing complainants' name in almost the identical style and color of type on the "back strip" or panel of the cigar boxes, and his evasiveness or failure to explain his course in so using or adopting such names, all point clearly to a deliberate purpose or design to appropriate to himself what is undoubtedly a valuable possession and trade right of the complainants. It is impossible to reconcile the course pursued by the defendant with innocence of purpose, even if, under the law, it were possible for him to defend on that ground.

[2] The contention of the defendant that the name "Garcia Brothers" was used by his predecessors cannot avail in defending this suit. There is no showing of a superior right in his predecessors as against the complainants; in fact, the evidence quite clearly shows that the defendant's predecessors were in no better position than is the defendant. If they used such name at all, they began its use long after the complainants had manufactured cigars which had become known under the name of "Garcia Bros." as complainants' cigars. So, too, the defendant's claim that his annual product is so small as not to make him a competitor of the complainants cannot be urged as supporting a right to use complainants' valuable trade-names as a means, possibly, to extend his business. If complainants have the right to stop the use of such names, they can exercise it regardless of the extent of defendant's business.

The complainants are entitled to a decree in accordance with the prayer of their bill.