**TANQUERAY GORDON & CO., LIMITED, v. GORDON.**

District Court, D. New Jersey.

March 6, 1935.

Lindabury, Depue & Faulks, of Newark, N. J., for plaintiff.

Jeffery, Kimball & Eggleston, of New York City, for defendant.

CLARK, District Judge.

This is another instance of that type of litigation which this court, mentally at least, always refers to as the "rose cases." In other words, we are called upon to answer Juliet's immortal question. Beyond the confines of warranty lies a vast field of comparative merit. To make that comparison more intelligent and less odious requires more than personal trial and error. The prospective purchaser is entitled to a prospect and by the same token that prospect requires an accurate identification. It is on this theory that the law of trade-marks and trade-names and their abuse by infringements and unfair competition is based.

Merchandise cannot be fingerprinted and must accordingly be tagged. "First come, first served," must obviously govern the choice of tags. The courts might very well have simplified that choice by refusing to protect anything but arbitrary or fancy names. We say "simplified" because clearly such choice has only phonetic limits. However, the law has permitted and so protected the selection of dictionary terms, whether they be of ordinary words, or geographic or proper names. Confusion and litigation have resulted. This is particularly so in the case of proper names because of, to mix a metaphor, some idea that an Englishman's name is like his castle or to adopt an American equivalent, permits the invocation of the so useful due process clause. Philip Hilton v. Joseph Hilton, 89 N. J. Eq. 182, 104 A. 375, L. R. A. 1918F, 1174 (N. J. Ct. of Errors and Appeals 1918).

The principal case presents the aforesaid confusion in, one might say, its lowest form. The plaintiff, a British corporation, distills and sells the original accompaniment of bitters. It has done so since

1769 and all that time has identified its product and its own care and skill by the use of the name Gordon. In saying "all that time," we should, of course, exclude, for the United States, the "bathtub era." Some ancestor of the defendant, how remote the record does not say, endowed the family with the same label of personality, i. e., Gordon. Whether by association of ideas or because of inherent talent, William of that name, the present defendant, turned his attention to the distillation and selling of gin. Simultaneously almost, the plaintiff company turned their attention to preventing the said distillation and selling and to that end enlisted the aid of this court.

So we find Mr. William Gordon on the receiving end of two injunctions. In the first suit, May, 1914, Tanqueray, Gordon & Co. v. Gordon Distilling & Distributing Co. (D. C.) 213 F. 510, 512, Judge Bradford expressed his conviction of "an unfair and fraudulent design on the part of the defendant to palm off its goods as those of" its own corporation and by permanent injunction required the word Gordon to be accompanied by "words of the same style, size and color, clearly indicating that the gin * * * is not the gin manufactured by the complainant." Five years later Judge Davis of this court signed a, this time, temporary injunction commanding that the words "not connected with Gordon and Company dry gin of London" be prominently displayed on the label, etc. In both of these cases the nominal defendant was a solely owned corporation bearing the defendant's name in its title. It is true that some of the cases seem to consider the offense greater where the corporate device is employed. This seems to us only another example of the Englishman's castle theory above adverted to.

Prohibition brought about a cessation of the guerrilla warfare between the British lion and the local boy. Its repeal finds us concerned with another major engagement. This time the defendant has abandoned the corporate shield.

■ We are frankly puzzled with the emphasis placed during the hearing upon the preliminary character of the relief sought. We are quite familiar with the reasoning underlying the cautious limitations upon the issuance of injunctions. All restrictions are dangerous. They may injure and they always annoy. Hence the need for certainty and for caution. That need only becomes apparent when the scope of the preliminary hearing does not permit of full proof and full consideration. In the case at bar what we think to be the determining factors were not in dispute and no amount of proof could alter them. In our opinion no amount of consideration should alter their legal consequences. Those determining factors seem to us the ancient usage and established reputation of the plaintiff's trade-name, the history of previous litigation, the identity of names, the failure to comply with Judge Davis' order of "prominent display," and the defendant's use of the British coat of arms.

It was our impression that counsel's insistence upon the preliminary nature of the hearing was a studied attempt to give an appearance of haste to our judgment. We might only observe that English judges habitually and as a matter of course discuss much more difficult and intricate questions of law and fact in decisions rendered from the bench at the conclusion of hearings. It might also be noticed that the defendant has obtained a supersedeas and thereby reduced his injury and annoyance to the vanishing point.

In an interesting article of our law school days, a well-known patent lawyer discusses "Unfair Competition by the Deceptive Use of One's Own Name" (12 H. L. Rev. p. 243). In its beginning we find these significant sentences: "How far can the courts go in protecting the original maker against this deceptive and damaging competition without unduly trenching on the right of the second Bass to use his own name and to carry on any lawful business? The answer towards which the judges are steadily moving is that the new maker must so differentiate his goods from the original that they will not deceive, or, at least, must make reasonable efforts to diminish the deception which will naturally follow from the similarity of name."

This judge is not only moving towards that answer, but has already arrived at it. He signed the decree in this case in compliance with such arrival. The "efforts to diminish the deception" ordained by that decree are, in our judgment, most reasonable. We required Mr. William Gordon to remove his name from the title and the description of his product. We permitted him to advise his customers of his care and skill by using that name to show origin. For instance, he can call his gin "Supreme Gin, Distilled by William Gordon." In so

854

doing we have followed almost in hacc verba the decree of a very great judge in a case involving almost identical facts. The late Justice Lurton, then sitting for the Circuit Court of Appeals, in Royal Baking Powder v. Royal (1903) 122 F. 337, at page 348, directed a decree similar to ours and concluded his opinion with the following language: "We all agree with Judge Evans in refusing to restrain the defendant from in any way using his own name, but a majority think that the duty of so using it as to carefully distinguish the business carried on by him, and the goods made by him, from the business done by the complainant and the goods made by them, demands that he shall present his own name in the least conspicuous manner possible consistent with the right to place his name and address upon the goods made by him."

We are not going to burden this opinion with any extensive citation of authority. Both sides are represented by unusually able and industrious counsel. We have no doubt that they will furnish the Court of Appeals with a multitude of cases. The United States cases are collected in 59 (4) and 70 (3) under Trade-marks and Trade-names and Unfair Competition in vol. 14 of the Federal Digest. From those sections, we culled fifteen cases where the issue was the use of one's own name in unfair competition. Only the following seemed not to have been called to our attention by counsel. For that reason we append them: Williams Soap Co. v. J. B. Williams Soap Co. (C. C. A.) 193 F. 384; Garcia et al. v. Garcia (D. C.) 197 F. 637; Stark v. Stark Bros. Nurseries & Orchards Co. (C. C. A.) 257 F. 9; Goldwyn Pictures Corp. v. Goldwyn (C. C. A.) 296 F. 391. Nims, the leading authority on "Unfair Competition and Trade-marks," has an interesting chapter on "Family Names or Surnames, in Trade" (chapter 6, 3d Ed.).

In conclusion, we record our surprise at counsel's apparent distaste for our suggestion from the bench that we intended to attempt "the introduction of a little ethics in American business." We should have supposed that the business history of the past ten years made such an attempt rather appropriate. We do not feel that it is particularly harsh to question the ethical perceptions of an individual who seems unconscious of the misleading impression created by the use of the British coat of arms on an American product.