## ROYAL BAKING POWDER CO. v. ROYAL.

(Circuit Court of Appeals, Sixth Circuit. March 16, 1903.)

### No. 1,131.

1. UNFAIR COMPETITION—USE OF NAME—LIMITS OF RIGHT.

A person has the right honestly to use his own name in connection with his business, even though he may thereby interfere with or injure the business of another, but a court of equity will restrain him from intentionally so using it as to deceive the public—or enable others to do so—into buying his goods as those of another, and will require him, when entering a business in which another is engaged, and using the name, to use every means reasonably possible to distinguish his own business and goods from those of his competitor.

2. SAME—MANNER OF USE—PURPOSE TO DECEIVE PURCHASERS.

Complainant had for many years been making and selling a baking powder under the name "Royal," arbitrarily used to designate origin, and by which name its product was called for by purchasers, and became distinctively known to the public, rather than by the appearance of the packages. Defendant, whose surname was "Royal," commenced the manufacture and sale of a baking powder which he put up in cans similar in size and shape to complainant's, and having a label similar in color and general appearance, bearing his name in large letters. He also advertised the same as the "New Royal." Having been enjoined from such advertising and from imitating complainant's labels, he changed the color of the label from red to blue, on which was printed the name "Maxim Baking Powder," but still having his name in prominent letters on the front of the cans. There was evidence that his baking powder had in some cases been sold as that of complainant, and that retailers had given it to customers calling for Royal Baking Powder, without explaining that it was not the well-known product of complainant. Held, that all the facts showed a purpose on the part of defendant to so use his name as to sell his product as that of complainant, and that, while he would not be enjoined from using his name, he would be restrained from displaying it on the front label of his cans.

---

¶ 1. Unfair competition, see notes to Scheuer v. Muller, 20 C. C. A. 165; Lare v. Harper & Bros., 30 C. C. A. 376.

122 F.—22

Appeal from the Circuit Court of the United States for the Western District of Kentucky.

This bill was filed to restrain the defendant, R. T. Royal, from using the name "Royal" in connection with a baking powder made by him, upon the ground that the complainant has an exclusive right to designate the baking powder made by it by that trade-name. Upon the bill, answer, exhibits, affidavits, and counter affidavits a temporary injunction was granted against the particular label and forms of advertising shown to have been used by defendant. That order was in these words: "And on the 19th day of February, 1900, this cause coming on to be heard upon the motion of the complainant for a temporary restraining order and injunction, and after hearing counsel for the parties, and the court being advised, it is now ordered that until further orders of this court the defendant, R. T. Royal, his clerks, attorneys, servants, and workmen, and all in privity with him, be, and they are hereby, restrained and enjoined from making any use whatever of circulars like the circular filed with the bill, and marked 'Defendant's Circular'; also from making any use whatever of the circulars like the circular produced with the bill and marked 'R. T. Royal Co. Circular,' and consisting in part of the words 'R. T. Royal Co.'; also from making any use whatever of the words 'The New Royal' in connection with baking powder caused to be by the defendant prepared· and compounded; also from making use of the labels like, or substantially like, the label produced with the bill, marked 'Defendant's Label'; also from causing to be published, in any form or manner whatsoever, advertisements like, or substantially like, the advertisements produced with the bill, marked 'Defendant's Advertisement A' and 'Defendant's Advertisement .B'; also from in any form or manner whatsoever making use of the word 'Royal' as the name or designation of a baking powder not manufactured by complainant; also from making any inequitable or misleading use whatever of the word 'Royal' in connection with the manufacture or sale of baking powder; also from doing any act or thing whatsoever to cause baking powder not manufactured by complainant to be offered or sold as Royal Baking Powder; also from in any form or manner whatsoever infringing or trespassing upon complainant's rights as the owner, manufacturer, and vendor of a brand of baking powder known as 'Royal Baking Powder.' But nothing in this order shall prevent the defendant from using his own name upon other labels or other advertisements relating to baking powder, where it shall be clearly and unmistakably specified and clearly and unmistakably shown upon such other labels and advertisements that the baking powder to which they relate is made by the defendant, and is his product, as distinguished from the product of the complainant, and where such other labels and advertisements shall otherwise conform to the terms of this order." Defendant, availing himself of the proviso contained in the restraining order, continued the manufacture and sale of baking powder, using upon his cans a new label, which .he claimed to be authorized by the terms of the injunction. To restrain this new label, complainant filed a supplemental bill, stating the facts. This was answered, and all intentional fraud denied. Proof was taken, and upon a final hearing the court made final the injunction theretofore granted, in the very terms of that decree, but dismissed the complainant's supplemental bill, and denied any relief against the product as sold and advertised under defendant's new label. The complainant was awarded an accounting, but failed to establish any damages. From the final decree the complainant has appealed, and seeks to extend the scope of the decree so as to prevent the defendant from using the name "Royal" in connection with baking powder altogether, or, in default· of a broad injunction, to prevent the use of the word "Royal" upon the front label of the cans in which his powder is sold.

The complainant, the Royal Baking Powder Company, is a corporation, which for many years has made and sold a brand of baking powder under the trade-name or designation of "Royal Baking Powder." This baking powder is put up in tin.cans conspicuously labeled "Royal Baking Powder." This label is shown on following page:

This label is in colors; the front or more conspicuous half being upon a red background, the lettering being in white; the other half in yellow, the lettering black. The defendant, R. T. Royal, was for some years engaged in the business of making and dealing in bicycles and bicycle supplies and sundries in the city of Louisville, Ky. Some time prior to the filing of this bill he added the business of a manufacturer of baking powder, which he put up in cans like those of the complainant. The label used before the restraining order is shown on opposite page.

The background of this label was a shade of red, with lettering in white. The shade of red differed slightly from the shade employed by complainant. The back of the label was in white, with black lettering.

After the restraining order the defendant adopted a new label, which is shown on page 342.

The background of this label in front is blue, the letters white. The background of the other side of the label encircling the can is white, and the lettering black.

Until restrained, the defendant advertised his product in circulars and letters, reproducing the first label on the front of his cans. Some of these circulars or advertisements were prefaced in bold type with the words "Ask for the New Royal." In addition to this, some of his circulars were signed, "R. T. Royal Co."

There was also evidence that the new or blue label shown above had actually caused, through the conspicuousness and significance of the word "Royal," some sale of the defendant's manufacture as and for the product of the complainant company. There is also evidence that the product of defendant was sold to the retailer at a less price than that of the complainant, and some evidence of sales being made by retailers of defendant's cans when Royal Baking Powder was called for, without explaining that it was not the well-known product made only by the complainant company.

After the decree, and pending the accounting, the defendant wrote the letter set out below, which was put in evidence on the accounting for the purpose of establishing the continued dishonest purpose of defendant in the use of his name in connection with baker powder:

"(Letter of R. T. Royal to Royal Baking Powder Company.)

"Royal & Co., Promoters,

"58 Courier-Journal Building.

"Louisville, Ky., April 15, 1901.

"Gentlemen: Presuming that you will abide by the decision of the United States Court in this last suit of yours against me, I think it best, if possible, to avoid any further friction of this kind. I am arranging to begin manufacturing my powder again, and to be frank, before getting too far into the business, will say that I will consider any proposition toward your buying me out. I have a company already to close with me here, and have several offers from N. Y. to come there and manufacture my goods. If you wish to keep me out of the buss. enough to pay me five thousand dollars, I would accept this and nothing less. If not, I will proceed with my negotiations to complete my organization and place to begin operations. I merely mention this at this time. So that if you anticipate any further fight or attempt to squeeze me out, which would be the cheaper and better plan, to keep up your efforts to suppress me or buy me out or compete for the business in a legitimate business basis. If you wish to consider this, kindly let me hear from you at once, as I will postpone further negotiations until I have had time to hear from you. You may appeal, which will, of course, be objectionable, but my people are satisfied to go ahead in my present position.

"Very respectfully,  R. T. Royal."

Archibald Cox, for appellant.

Before LURTON, DAY and SEVERENS, Circuit Judges.

# BAKING POWDER.

## PERFECTLY PURE.

All Grocers selling this Powder are authorized to guarantee entire satisfaction to customers.

### DIRECTIONS:

Use two heaping teaspoonfuls of Baking Powder to a quart of sifted flour, the quantity may be varied according to the quality of flour and the article to be made; Buckwheat Cakes require more and cakes where eggs are used, less sufficient must be used according to circumstances.

Always mix Powder through the dry flour in the dry state; add salt and shortening to suit the taste. Mix with cold water, or sweet milk into a smooth dough that can be handled without sticking, and bake in hot oven.

CAUTION.—Never use sour milk; Tartar, Soda or Saleratus with the Powder, and it is always best to keep it covered in a dry place.

MANUFACTURED BY

## R. T. ROYAL,

LOUISVILLE, KY.

### Gebrauchsanweisung.

Man nehme zwei Theelöffel Backpulver zu einem Quart gesiebten Mehl von irgend welcher Qualität, den Quoten entsprechend; Buchweizen Cakes gebrauchen mehr und Cakes wozu Eier gebraucht werden, weniger; Es muß genug gebraucht werden, je nach Umständen.

Man mische immer das Pulver mit dem Mehl in trockenem Zustand; füge jetzt wegen des Geschmacks Salz und Fett zu. Mische es mit kaltem Wasser und süßer Milch zu einem weichen Teig, welcher leicht ohne Anzubacken behandelt werden kann und lege denselben in einen heißen Ofen.

Wahrung.—Man benutze niemals saure Milch, Cream Tartar, Soda oder Saleratus mit dem Pulver und halte es immer verdeckt an einem trocknen Plaß.

# MAXIM
## PURE
# BAKING POWDER

All grocers selling this Powder are authorized to Guaran-tee entire satisfaction to customers.

### DIRECTIONS.

Use two heaping teaspoonfuls of Baking Powder to a quart of sifted flour, the quantity may be varied according to the quality of flour, and the article to be made; buck-wheat cakes require more, and cakes where eggs are used, less, sufficient must be used, according to circumstances. Always mix powder through the flour in the dry state; add salt and shortening to suit the taste. Mix with cold water or sweet milk into a smooth dough that can be handled without sticking and bake in hot oven.

CAUTION.— This powder is ready for use — do not add anything to it. Buttermilk is often used with good re-sults instead of sweet milk. When not in use keep covered in dry place.

MADE ONLY BY

## R. T. ROYAL,
LOUISVILLE, KY.

MAXIM BAKING POWDER MADE BY R. T. ROYAL, LOUISVILLE.

LURTON, Circuit Judge, after making the foregoing statement of the case, delivered the opinion of the court.

The complainant seeks to extend the scope of the decree of the Circuit Court so as to keep the defendant, R. T. Royal, from using the name "Royal" in connection with baking powder made by him; the name "Royal" being claimed as exclusively belonging to the baking powder made by it. For many years before the defendant engaged in the business, the complainant (now the appellant) had made a kind of baking powder which it has called "Royal Baking Powder." By keeping this name conspicuously and persistently before the public, by labels on its cans and boxes, by circulars, posters, and other forms of advertising, it has acquired a very large patronage for this product, so that the trade-name "Royal Baking Powder" has become a most valuable asset. The evidence makes it clear that the definitive thing which has come to stand for the baking powder made and sold by the complainant is not so much the shape or size of the cans in which the product is sold, or the color of the label around its cans, but the trade-name "Royal." This word, long used, not to indicate grade or quality, but to signify origin, has come to signify the baking powder made only by the Royal Baking Powder Company. Thus the origin of the article is indicated by the word which, on the evidence, is used in asking for and selling the article. When this is the case, the appearance of the package becomes of minor importance, for many people must call for the goods who have either never seen the package or have forgotten its appearance, or are careless or indifferent of all save the well-known fact that they wish a baking powder, and wish that particular baking powder known as "Royal." Thus the complainant has appropriated the word "Royal" to indicate baking powder made by it, and, whether it has or has not a technical trade-mark in the word, it has used it until it has come to have a secondary signification, which is entitled to protection.

The general principles controlling cases of this general character are too well settled to need restatement. The difficulty is to apply these principles to the particular facts of the case. Now, if the defendant did not bear the family name of "Royal," there would not be the slightest doubt but that his use of the word "Royal" in connection with a baking powder made and sold by himself would be absolutely prohibited, upon the ground that the use of so arbitrary and meaningless a word applied to a baking powder could only be with the dishonest intent to appropriate to himself some of the benefits resulting from the demand for the Royal baking powder made and sold by the complainant. On the facts of this case, it is very plain that, when the defendant went into this baking powder business, his purpose was to use his own name to sell his own product as and for the article made by the complainant. He was engaged in making bicycles and bicycle sundries. Now he adds to that business that of making and selling a baking powder. He puts it in cans resembling the shape and size of cans used by complainant. That does not count for much, as the size and shape of the cans is doubtless common to all makers of this kind of goods. But he covers

his can with a label, the front of which is a shade of red much like that used by complainant. He prints very conspicuously in white letters the words "Baking Powder," "R. T. Royal," in such manner that when the cans are exhibited facing the purchaser the words conspicuously showing are:

Baking<br>
Powder<br>
Royal

—one over the other as written.

Between the words "Powder" and "Royal," in small and almost invisible black letters, are the words "manufactured by," and below the word "Royal," in the same nonconspicuous type, are the words "Louisville, Ky."

His circulars and advertisements emphasize a dishonest purpose, by describing his product as the "New Royal," and signing his circulars, "R. T. Royal Company."

Now, when he was enjoined from using these very significant and indisputable indicia of a design to palm off his goods for those of his rival, he changes the color of his label to blue. He puts the word "Maxim" in conspicuous type at the top of his label, and brings out from obscurity the words "made by" and "Louisville, Ky." What he still does is to display his own name, "Royal," very prominently on the front of the label, and in connection with the words "Baking Powder." Now, if the defendant's name was any other than "Royal," this conspicuousness given to his name as the maker of the goods would have gone strongly in evidence of an honest purpose to do all that he could to sell his product only as his product, and not as that of another. Thus if his name had been Jones, and "Jones" had been displayed as prominently on this label as is the word "Royal," he would, in connection with the change in color of label, have done all that could be required of him to effectually distinguish his goods from those of the complainant. But his name is not "Jones," but "Royal," and the word "Royal" is the word which sells the complainant's goods, and the word "Royal" is conspicuously displayed on the defendant's label in direct association with the words "Baking Powder." For this reason the thing wears another color, for it is the very conspicuous word "Royal," in connection with this particular product, which does the mischief. The careful purchaser, who reads the whole label, and knows that R. T. Royal is not the maker of the baking powder he wants, but a company known as the Royal Baking Powder Company, will not be deceived. The customer that happens to know that the goods he or she wishes are not made in Louisville will be warned if the whole label is read. The purchaser that knows that the article wanted is put up only in cans with red label may not be misled by the conspicuousness with which "Royal" is displayed on defendant's goods with a blue label. But there are others who are likely to be misled in believing this to be the product of the complainant because of the association of the name "Royal" with this article. And the evidence in this case does not leave this open as a mere matter of conjecture or probability. Evidence of instances of deceit due to this prominent display of the trade-name of complainant's

product make it clear that defendant's product as put on the market does deceive. That tricky retailers represent the defendant's article as the goods of the complainant, knowing better, is probably not a matter for which defendant is responsible, if he has done his full duty in distinguishing his own from that of the complainant. But if he has intentionally put up his goods in a form or color or package or under a name which lends itself readily to deception, it is not clear that defendant is not responsible for the frauds accomplished by the retailer, who only avails himself of the means of fraud furnished by the defendant.//Fairbanks Co. v. Bell Co., 45 U. S. App. 205, 23 C. C. A. 554, 77 Fed. 869; N. E. Awl Co. v. Marborough, 168 Mass. 154, 46 N. E. 386, 60 Am. St. Rep. 377; Hostetter v. Sommers (C. C.) 84 Fed. 333.

We have said "intentionally puts his goods," etc. For, in the absence of a purpose to mislead, it cannot be that, in the forum of law or morals, one should be responsible for more than the natural, reasonable, and proximate consequences of his own conduct. But in this case we are unable to get away from the conviction that the defendant was induced to go into this baking powder business for the purpose of obtaining such advantages as he could out of the fact that his surname was "Royal," and that until restrained his every step emphasized his fraudulent purpose to steal the good will acquired by the complainant for Royal Baking Powder. That he has experienced any change of moral purpose since, we doubt. The letter, heretofore set out, proposing to sell out his right to engage in the baking powder business, affords evidence that his purpose to avail himself of his family name as a means of obtaining some of the fruits of the good will earned by complainant had not been changed. The unfair intent is not concealed by his mode of proclaiming so loudly that the article which he makes and sells is one made by R. T. Royal. It is the surest way of inducing the sale of his goods as and for the goods of the Royal Baking Powder Company. That by this manner of using his name as a maker of baking powder he is attempting to get the benefit of the complainant's reputation, we are convinced. Now, can he do this?

It is said that a man may use his own name in any honest business, and that no court will go so far as to prevent the use of one's own surname in connection with any business. It may be that circumstances will arise which may induce a court of equity to enjoin a man from any use of his own name in connection with a business as open to him as to others. We are not aware that the precedents have as yet gone so far, though there may be stray cases which support the contention. The cases which enjoin corporations from the use of a particular name, even though the name be that of some one connected with it, are not uncommon. Garrett v. T. H. Garrett & Co., 24 C. C. A. 173, 78 Fed. 472; Rogers Co. v. Wm. Rogers Co., 17 C. C. A. 576, 70 Fed. 1017; Valentine Meat Juice Co. v. Valentine Extract Co., 17 Real Prop. Cas. 673, 686; Stuart v. F. G. Stewart Co., 33 C. C. A. 480, 91 Fed. 243. But such cases are distinguishable. A corporate name is an artificial name, and is selected with an object, and may be changed, and a new one taken. The

adoption of a particular name as a part of a corporate name, as in the Garrett Case, cited above, may carry with it patent evidence of an intent to mislead and trade unfairly. Where one has used his own name as a trade-name, and then parted with it, he may, of course, be enjoined from using his name in that business. Kidd v. Johnson, 100 U. S. 617, 619, 25 L. Ed. 769; Russia Cement Co. v. Le Page, 147 Mass. 206, 17 N. E. 304, 9 Am. St. Rep. 685; Le Page Co. v. Russia Cement Co., 2 C. C. A. 555, 51 Fed. 941; Hoxie v. Chaney, 143 Mass. 592, 10 N. E. 713, 58 Am. Rep. 149. But we are not willing to say that one may not honestly use his own name in connection with any business which is open to him. Brown Chemical Co. v. Meyer, 139 U. S. 540, 11 Sup. Ct. 625, 35 L. Ed. 247; Singer Mfg. Co. v. June Mfg. Co., 163 U. S. 169, 187, 16 Sup. Ct. 1002, 41 L. Ed. 118; Russia Cement Co. v. Le Page, 147 Mass. 206, 208, 17 N. E. 304, 9 Am. St. Rep. 685; Holloway v. Holloway, 13 Beavan, 209; Rogers v. Rogers, 53 Conn. 121, 1 Atl. 807, 5 Atl. 675, 55 Am. Rep. 78; Meneely v. Meneely, 62 N. Y. 427, 20 Am. Rep. 489; Meyer v. Medicine Co., 7 C. C. A. 558, 58 Fed. 884; Pillsbury v. Pillsbury, 12 C. C. A. 432, 64 Fed. 841, 846; Stuart v. F. C. Stewart Co., 33 C. C. A. 480, 91 Fed. 243, 246. If the legitimate use of one's own name operates to injure the business of another, the injury must be borne. In Croft v. Day, 7 Beav. 84, cited above, the defendant, Day, a nephew of Day, of Day & Martin, famous makers of blacking, was enjoined from using the name of Day & Martin, and from any imitation of labels. But the court said of the defendant, Day:

"He has a right to carry on the business of a blacking manufacturer honestly and fairly. He has a right to the use of his own name. I will not do anything to deprive him of that or any other name calculated to benefit himself in an honest way, but I must so prevent him from using it in any such a way as to deceive and defraud the public."

· In Meneely v. Meneely, cited above, the injunction granted below operated to prevent the defendants from using the name Meneely in any way in the business of bell founding in the city of Troy. The name of one of the defendants was Meneely, and he was engaged in that ·business. The business of bell founding by the complainant, Meneely, and their predecessors had long been established, and their bells well known as the "Meneely Bell." The Court of Appeals made final injunction, saying:

"If the defendants were using the name of Meneely with the intention of holding themselves out as the proprietors and managers of· the old-established foundry which was being conducted by the plaintiffs, and thus enticing away the plaintiffs' customers, and if with that intention they used the name in such a way as to make it appear to be that of the plaintiffs' firm, or resorted to any artifice to induce the belief that the establishment of the defendants was the same as that of the plaintiffs, and perhaps if, without any fraudulent intent, they had done acts calculated to mislead the public as to the identity of the establishments, and produce injury to the plaintiffs beyond that which resulted from the similarity of name, then the cases referred to sustain the proposition, not that the court of equity would absolutely restrain the defendant, Meneely, from the use of his own name in any way or form, but simply that the court would enjoin him from using it in such a way as to deceive the public and injure the plaintiffs. The

manner of using the name is all that would be enjoined, not the simple use of it; for every man has the absolute right to use his own name in his own business, even though he may thereby interfere with or injure the business of another person bearing the same name, provided he does not resort to any artifice or contrivance for the purpose of producing the impression that the establishments are identical, or do anything calculated to mislead. Where the only confusion created is that which results from the similarity of the names, the courts will not interfere. A person cannot make a trade-mark of his own name, and thus obtain a monopoly of it which will debar all other persons of the same name from using their own names in their own business."

The case of Valentine Meat Juice Co. v. Valentine Extract Co., cited above, has been relied upon as an authority for enjoining a person from in any way using his own name in his own business when another person has acquired a trade-name in that name in the same business. This is a mistake. The Valentine Extract Company was a corporation, and the name "Valentine Extract Co., Ltd.," an artificial name, although one Charles R. Valentine had gotten up and was manager of the company. This Charles R. Valentine obtained a patent for a method of making and packing the extract of meat into small globules. This patent, together with his good will and trade-mark, he conveyed to the company organized by himself, which took the name of "Valentine Extract Co., Ltd." The court found that the names "Valentine Meat Juice" and "Valentine Extract" were well-known trade-names in the markets for such products, and that the name "Valentine Extract Co." had been adopted to get the benefits of that reputation as far as possible. The Valentine Extract Company was perpetually enjoined from—

"Carrying on business as manufacturers or vendors of any preparation of extract of meat or meat juice under any name or title of which the name 'Valentine' or 'Valentine's' forms part, and from selling, or offering or exposing or advertising for sale, or procuring to be sold, any such preparation as aforesaid, not being the plaintiff's manufacture, under any name or description of which the name 'Valentine' or 'Valentine's' or 'Valtines' forms part."

In reference to Charles B. Valentine, the organizer of the company, and the patentee of the meat extract made and sold by it, Rigby, L. J., said:

"Seeing that he has been trading in the name of Valentine, irrespective of the company, * * * I think it is right, as asked for by the injunction, that he should not use it without carefully distinguishing himself from the meat juice company who' have been the objects of his attacks."

Accordingly the injunction, as to him, ordered that he be restrained from carrying on any such business—

"Under any such name or title as aforesaid without clearly distinguishing such business from the business of the plaintiff, and from selling, or offering or exposing or advertising for sale, or procuring to be sold, any such preparation as aforesaid, under any such description as aforesaid, without clearly distinguishing such preparation from goods of the plaintiffs."

Whatever injury results to the complainant company from the honest and fair use by the defendant of his own name in his own business is a damage which must be endured. It is a natural consequence of the adoption of the name of a person as a trade and cor-

porate name. But the defendant must not use his name in the business in which complainant has embarked, without using every means reasonably possible to distinguish his business from that of the complainant, and his goods from those made by it. It is plain that, when he started in this business, he did so with the purpose of getting the benefit of his name by misleading the public into the belief that the baking powder made and sold by him was the preparation made and sold by the complainant. When he changed his label, he did so to meet the temporary injunction granted by the court below, and we cannot credit him with any intention to use his own name fairly.

In view of the very plain purpose of the defendant to attack the business of the Royal Baking Powder Company in an unfair way, and of the positive evidence of purchasers misled by the conspicuous way in which the name "Royal" is displayed on the front label of defendant's cans, and of the evidence that it is not customary in the trade to display the maker's name on the front of the label, a majority of the court think it right to extend the injunction so as to restrain the defendant from displaying his name on the front label of his cans. That the maker should have his name and address somewhere on his goods is right. We all agree with Judge Evans in refusing to restrain the defendant from in any way using his own name, but a majority think that the duty of so using it as to carefully distinguish the business carried on by him, and the goods made by him, from the business done by the complainant and the goods made by them, demands that he shall present his own name in the least conspicuous manner possible consistent with the right to place his name and address upon the goods made by him.

Remand, with directions to extend the scope of the decree as indicated. The decree otherwise affirmed. The costs of appeal will be divided.

Note. Judge DAY participated in the decision of this case.