## IMITATION OF AN ESTABLISHED COMMERCIAL NAME.

Common Pleas Court of Hamilton County.

THE FRENCH BROS. DAIRY CO. v. JOHN GIACIN.*

Decided, May, 1909.

*Unfair Competition—In the Use of the Word "French" as Applied to Ice Cream—Methods Calculated to Deceive—Injunction—Trade Names.*

Where a family named French have been in the milk, cream, butter and general dairy business in the same locality for a great number of years, and have always carried on their business under the name of French whether as individuals or a corporation, and the manufacture and sale of ice cream has become an important branch of their business and has grown to large proportions, injunction will lie against the use in the same locality of the name "French Ice Cream Co." by one whose name is not French and whose nationality is not French, and whose only claim of right to use the word "French" is based upon the fact that his ice cream is made in a "French pot," and the testimony discloses that practically all the ice cream manufacturers use the French pot process.

*Albert Bettinger* and *Jacob Shroder,* for plaintiff.
*Scott Bonham,* contra.

GORMAN, J.

This action was commenced by the plaintiff, a corporation duly incorporated under the laws of Ohio, against the defendant, John Giacin, doing an ice cream business under the pseudo corporate

* Affirmed by the Circuit Court; reported, *French Bros. Dairy Co. v. Giacin,* 12 C. C.—N. S., ——.

550    HAMILTON COUNTY COMMON PLEAS.

French Bros. Dairy Co. v. Giacin.    [Vol. VIII, N. S.

name of "The French Ice Cream Co." in the city of Cincinnati and vicinity, to enjoin forever the defendant from in any way using the name "French" in connection with his, the defendant's, ice cream business, and for damages in the sum of $10,000, and for equitable relief.

The case is submitted on the amended petition, the answer thereto and the reply and upon the evidence and arguments of counsel. The trial of the cause consumed five days and was most strenuously contested on the part of plaintiff and defendant.

The evidence discloses that the business of the plaintiff company was established in 1842 by Thomas French, and after his retirement from active participation in the management of the business, it was carried on for many years under the name of Thomas French's Sons until, in 1889, the sons and grandsons of Thomas French incorporated under the laws of Ohio, adopting the name of the French Bros. Dairy Company; that the business originally conducted by Thomas French was that of a dairy farm, producing and selling in and about Cincinnati milk, cream, butter and other dairy products; that as time went on the business increased and expanded until at the time of the commencement of this action the plaintiff, which is the successor of Thomas French and Thomas French's Sons in business, good will and reputation, owned and operated within a radius of fifty miles of Cincinnati twenty-one milk stations and creameries where it receives milk from its own dairies and from others who sell to it large quantities of milk daily; and from these stations the milk, cream, butter, etc., are shipped daily in large quantities to Cincinnati and sold to a large number of plaintiff's customers throughout the city of Cincinnati and all the surrounding towns and country, both at wholesale and retail.

In 1896 the plaintiff company as a part of its business began the manufacture and sale of ice cream, both wholesale and retail, and the business has grown to such large proportions that the sales extend out for a distance of many miles from the city of Cincinnati, and its ice cream has found favor and established a reputation for good ice cream among all classes of the public and has been extensively purchased during all these years by

families and ice cream stands, soda-water stands, drug stores and
for church and social functions and picnics and all kinds of
gatherings where ice cream is generally used, and thereby the
ice cream of plaintiff has acquired a standing and reputation in
the city of Cincinnati and vicinity for its good quality. Plaint-
iff to still further advertise its ice cream has for several years
used and circulated among its customers and retail dealers at-
tractive signs with the name "French Bros. Ice Cream," and
lettered a large number of its wagons used exclusively in the ice
cream branch of its business in the same way. It also advertised
the name "The French Bros. Dairy Co. Ice Cream" on the front
part of its main and branch stores, and on placards, cartons used
to carry away ice cream, on its buckets, tags and otherwise.
At the time of the bringing of this action plaintiff had eleven
branch stores in and about Cincinnati, and one large central store
on West Seventh street, from each of which it was selling large
quantities of ice cream; and it used in the ice cream branch of
its business twenty wagons containing the name of "French
Bros." and "Ice Cream" and was thoroughly and extensively
known as a manufacturer of a fine quality of cream, all in con-
nection with its other business and inseparately connected and as-
sociated with the word "French."

It in common with practically every ice cream manufacturer in
Cincinnati for many years manufactured a large part of its ice
cream in a freezer called a "French pot"; and it is in evidence
that this pot has been in use in Cincinnati for more than twenty-
five years and was so used long before defendant came to Cin-
cinnati or conceived the idea of beginning the ice cream busi-
ness; but there is not now and never has been any ice cream sold
on the market in Cincinnati known to the public as French ice
cream. The process of making ice cream whether by the "French
pot" or by some other pot did not and does not determine the
name of the cream, but rather the flavoring of the cream and
the manner of putting it into shape for sale. It is in evidence by
the dealers and manufacturers of ice cream that the various kinds
of cream sold are designated as vanilla, lemon, peach, pineapple,
etc., or Neapolitan, Delmonico, Tuti-fruiti, etc. The defendant,
John Giacin or Giovanni Giacin as he wrote it in his native lan-

552    HAMILTON COUNTY COMMON PLEAS.

French Bros. Dairy Co. v. Giacin.    [Vol. VIII, N. S.

guage, is an Italian and engaged in the work of making ice cream for twenty-five years or more in Italy, Germany, Austria, Switzerland and France, and later after coming to this country he was thus employed for eight or nine years prior to 1906 in Cincinnati, but never in the employ of plaintiff. For some years he was employed as the maker of ice cream by Mr. Del Favero, who owns and carries on the Vienna Ice Cream Co. within three or four squares of the plaintiff's main store on West Seventh street, and while there employed defendant says that he heard of the French Bros. Dairy Co. and that it was engaged in the manufacture and sa'e of ice cream. Defendant commenced business in 1906 at No. 2603 Vine street, Cincinnati, in what is commonly known as "Corryville" and advertised himself under the pseudo corporate name of "The French Ice Cream Co." He was alone in business and started on a small scale with a very limited capital and in a modest way. He placed the name "The French Ice Cream Co." on his windows in white enamel letters and placed over the door swinging above the sidewalk and at right angles to the building in which his store was located, a large illuminated electrical sign with the same name conspicuously lettered thereon and below the words "Ice Cream, Wholesale and Retail." The same name "The French Ice Cream Co." was lettered on his wagon and on the cartons, letter-heads, tags, buckets, etc., used in the business. No other name appeared thereon until last July, when on the application of plaintiff, Judge Woodmansee ordered defendant to place his name on the windows, signs, wagons, cartons, letter-heads, etc., since which time in smaller letters his name, John Giacin, appears below the name of the French Ice Cream Co., as proprietor. Some time early in July, 1908, he established another ice cream store or parlor at the corner of Woodburn avenue and Chapel street, Walnut Hills, and on the windows facing both streets he placed the name "The French Ice Cream Co." "Branch" in white enamel letters without his name, until afterwards in July in compliance with Judge Woodmansee's order he placed his own name as "proprietor" in smaller letters below the name of the company. Same time in February, 1908, he filed an affidavit in the office of the clerk of this court setting forth that he was the sole proprietor and owner of the

business carried on under the name of the French Ice Cream Co., but just why he did this is left to conjecture, as it was wholly a vain and useless thing to do unless he intended to use this fact and this circumstance as a self-serving declaration of his good faith, or to rebut a presumption of bad faith that might arise from the use of the word "French." If he was engaged with some other person as a partner, carrying on business under a fictitious name, there might have been some reason under Sections 3170-1 to 3170-7, Revised Statutes, for filing this affidavit.

Defendant also advertised his business in the city directory and the telephone directory in large letters, "The French Ice Cream Co." for the years 1906, 1907 and 1908, and in the telephone directory under the classified business of "Ice Cream" he again inserted at a cost of six dollars per year in large letters the name of "The French Ice Cream Co.," and in small letters below this he caused his name to be printed as "proprietor.".

Defendant's explanation of how he came to use the name of "French" in a pseudo corporate name to designate his business is that he considered, when he decided to go into business, what name he should place on the window and on his sign, and as he said nobody would know him by his name he spoke to his friend Del Favero, who carried on business under the name of "The Vienna Ice Cream Co.," and as he (Giacin) was about to make ice cream in a French pot (although practically every maker of the article in Cincinnati used this pot) and to use his own language Del Favero said: "So he told me I had the French pot and make French ice cream—we use the French pot, so that is how I came to call the name." The evidence discloses that this defendant did not make what he himself called French ice cream, at least not to sell generally, nor did he advertise as a maker of so-called French ice cream. There is testimony tending to show that several persons supposed the store of defendant at the corner of Woodburn avenue and Chapel street was a branch store of the French Bros. Dairy Co. There is evidence of confusion in sending to the French Brothers Dairy Co. at Seventh street bills and mail matter intended for defendant and addressed to the French Ice Cream Co. There is evidence that several persons who were customers of the plaintiff inquired

of the plaintiff's clerks and employes if they could not purchase their ice cream from plaintiff at its branch store on Walnut Hills at the corner of Chapel and Woodburn avenue. There is no evidence of any pecuniary loss plaintiff suffered by reason of the acts of defendant. There is no evidence that defendant makes an inferior grade of ice cream, nor is it shown that plaintiff's ice cream is superior to defendants, nor is there any proof of a single sale lost by plaintiff because of the defendant's use of the word *"French"* in connection with his ice cream business.

The court is of the opinion in the light of all the evidence in this case, and of the conduct of the defendant and the circumstances under which the defendant has made use of a pseudo corporate name employing the name or word "French" in connection with the ice cream business which he established and is carrying on, that he has been and still is guilty of unfair competition and unfair trade with reference to plaintiff and the general public in and about Cincinnati.

As a rule honest men are not ashamed to use their own names in connection with their business, calling or vocation, and when a man who is engaged in business by himself, without a partner or associate, uses a false name and a corporate name under which to carry on a small business it is but natural to suspect him of some sinister motive. If the defendant had actually undertaken to organize a corporation and adopt the name of "The French Ice Cream Co." the probabilities are that the Secretary of State would have refused a charter under that name because of the fact of plaintiff being in the field first, engaged in the same business; and under Section 3238 of the Revised Statutes the Secretary of State might well have said that the name adopted might be likely to mislead the public, or is so similar to the name of the plaintiff as to be likely to mislead the public. Nor does the defendant have the excuse of being a Frenchman; and what reason an honorable Italian might have for designating his individual business as a French company is not explained by any evidence or theory evolved in the case, except the solitary fact that defendant was making ice cream by means of a French pot, a practice employed by every maker of ice cream in Cincinnati according to the evidence. The inevitable conclusion to

be arrived at in this case is that defendant desired to create the false impression in the public mind that he was carrying on a large business and therefore he used a corporate name which he had no moral or honest reason to employ, and further he hoped and expected to get some of plaintiff's trade by using the name of "French," long well and favorably known in this community in connection with ice cream, milk, cream, butter and dairy products.

If he were endeavoring to use fair, open, honest methods in the prosecution of his business there is no reason why he should not have used his own name, and built up a reputation and fame for making a good and wholesome article of commerce, second to none in this community.

The books are full of cases similar to the one at bar in which persons have endeavored by simultating the name, label, size of the package, or some other one or more features of a rival person or corporation's business to filch some or a great part of a competitor's business. All such attempts have been frowned upon not only by courts of equity but by courts of law. Even persons whose names are the same as that of a rival's in the same business have been prohibited from using that name in connection with the same business in any way calculated to deceive a person of ordinary intelligence into believing or supposing that he is purchasing the goods of the person or concern first in the field and having an established reputation. And even where the defendant honestly supposed he had a right to simulate the name he has been enjoined. Nor does the court stop to inquire whether or not any loss has been sustained by plaintiff, if the simulation is calculated to deceive a person of ordinary intelligence.

The following authorities will serve to illustrate the points involved in this case and support the conclusion which the court has reached.

"As a wrong remediable in common law actions for damages, unfair competition consists in intentionally inducing third persons to buy defendant's property or patronize his business, by false representations that the property or business is that of plaintiffs. In equity the term may be even broader, including conduct of the defendant which is unjustifiably harmful to plaintiff but which is not intentionally dishonest." (Underlining the courts.) *Burdick's Law on Torts*, 2d Ed., pp. 384-385; *Orr*,

*Ewing & Co.* v. *Johnston & Co.,* 40 L. T. (N. S.), 307 (1879);
*Vulcan* v. *Myers,* 139 N. Y., 364.

Even if the defendant in the case at bar were using his own
name, nevertheless that name having been in use for many years
before he began business in this community and in the same
business he could not use it unrestrictedly.

In the case of *Singer Mfg. Co.* v. *June Mfg. Co.,* 163 U. S., 169,
the court uses this language on page 187:

"Where the name is one which has previously thereto come to
indicate the source of manufacture of particular devices, the use
of such name by another unaccompanied with any precaution or
indication, in itself amounts to an artifice calculated to produce
the deception alluded to in the foregoing adjudication. Indeed
the enforcement of the right of the public to use a generic name
dedicated as the results of monopoly, has always, where the fact
required it, gone hand in hand with necessary regulation to make
it accord with the private property of others and the require-
ments of public policy."

The courts have always, in every case without exception, treated
the one as the co-relative or resultant of the other. *See, also,*
*Wyckoff* v. *Howe Scale Co.,* 100 Fed., 521.

If however the corporation has built up a business and gained
a reputation which goes with that name, such priority of use may
put another corporation which selects the same name to a disad-
vantage. The newcomer in the field of competition must not
palm off his goods as those of the old and well known corporation.
*Am. Walth. Watch Co.* v. *U. S. Watch Co.,* 173 Mass., 85; *Elgin*
*Watch Co.* v. *Watch Case Co.,* 179 U. S., 665.

As was said in *Hostetter Co.* v. *Martioni,* 110 Fed., 524:

"Courts demand a high order of commercial integrity in the
use by competitors of a name under which a rival has gained
a business reputation whether that name is strictly a trade-
mark or is descriptive of quality merely; and frown upon all
filching attempts to obtain the reputation of another."

See, also, *Higgins Co.* v. *Higgins Soap Co.,* 144 N. Y., 462:

"And it does not matter that *the name of the newcomer is not
precisely that of the established corporation. Indeed similarity
and not identity is the usual recourse when one party seeks to
benefit himself by the good name of another." Celluloid Mfg.*

*Co.* v. *Cellonite Mfg. Co.,* 32 Fed., 94; *Peck Bros. & Co.* v. *Peck Bros. Co.,* 113 Fed., 291; *Bissell Chilled Plow Works* v. *T. M. Bissel Plow Co.,* 121 Fed., 357.

The case at bar is not one of the use of a geographical name, but even if it were a geographical name the plaintiff having incorporated the name "French" (a family name and not geographical) into the corporate name, a secondary meaning has been given to it in connection with the ice cream made and sold in Cincinnati and vicinity by plaintiff, and under these circumstances defendant will not be permitted to take away the good will attached to the name of "French" in connection with plaintiff's ice cream business. *Newman* v. *Alvord,* 49 Barb., 588; *Elgin Watch Case Co.* v. *U. S. Watch Case Co., supra; Brooklyn White Lead Co.* v. *Masory,* 25 Barb., 416.

In *Drake Medicine Co.* v. *Glessner,* 68 O. S., 337, the court held that a geographical name when not used to designate the locality of the manufacturer may be a good trade-mark. In speaking of the word "German" on page 356 the court says:

"Upon this distinction it is difficult to understand why the word '*German*' upon a package which expressly shows that it is made at 'Findlay, Ohio, U. S. A.,' may not be a valid trademark."

By the same token why may not the word "*French*" on a package or bucket of ice cream purporting to be made in Cincinnati, Ohio, be protected as a valid trade-mark, especially as the name is the family name of the stockholders of the corporation, and the name has also been blown, as it were, into the corporate bottle by due process of law in the incorporation of the company. If there is no ice cream on the market known as French ice cream, the defendant has no right, because he happens to use a French pot, which appears to be in gereral use, to name his product French ice cream and use that name for the purpose of pirating on the good will of the plaintiff. See *Royal Baking Powder Co.* v. *Royal,* 122 Fed., 337.

In the case at bar the word that has been in use by plaintiff and its predecessors in the business is the family name of the large majority of the stockholders of the company, and it is the prominent and central word which has gained a reputation and good will for the plaintiff's business by reason of the fact that

558 HAMILTON COUNTY COMMON PLEAS.

French Bros. Dairy Co. v. Giacin. [Vol. VIII, N. S.

those who bear the name have come to be known in the public mind as synonyms of honesty and fair dealing and have conveyed to the public the idea that whatever product is sold or manufactured in the dairy, milk or cream line bearing the name of "French," in this community may pass current at par. The prominent word in the name of the pseudo company adopted by the defendant is "French." Take away that word and substitute any other and there can be no possibility of any one being deceived or injured, especially not the plaintiff. If the word Giacin be substituted for "French" in the name adopted by defendant who can complain? "The Giacin Ice Cream Co." doth sound as fair and trip as lightly on the tongue as that of the French Ice Cream Co. It may not and probably is not as well known in connection with the ice cream business, and this may be the reason for defendant's fondness for the name of "French" instead of his own name or the name of the country of his birth, or any other of a hundred names he might have selected without laying himself under the charge of resorting to unfair methods in his zeal to advance his business too rapidly. A careful reading of the case last cited (122 Fed., 337), decided by our own Circuit Court of Appeals, will enable one to compare the facts in that case with those in the case at bar, and to see how applicable the rules therein laid down are to the case under consideration.

On the question of the similarity of names and the extent to which the courts will go in enjoining a newcomer from adopting a name similar to that of a competitor long in the field, see the following cases in addition to others heretofore cited: *National Biscuit Co.* v. *Baker,* 95 Fed., 135; *J. & P. Coates* v. *John Coates Thread Co.,* 135 Fed., 177; *Walter Baker Co.* v. *Baker,* 77 Fed., 181; *Congress & Empire Spring Co.* v. *High Rock Congress Spring Co.,* 57 Barb., 526.

It has been heretofore stated that a court of equity will not require proof of fraudulent intent on the part of defendant in order to grant plaintiff relief. If the use of the name "French" in connection with the ice cream business is calculated to deceive a person of ordinary intelligence, then the use of the name will be enjoined. See *Tarrant & Co.* v. *Johann Hoff,* 76 Fed., 959; *Block Light Co.* v. *Tapphorn,* 2 N. P.—N. S., 553; *12 Harvard*

*Law Review*, p. 243, where there is a large collection of cases on this point; *Reddaway* v. *Benham* (1896), App. Cas., 199; *Mc-Lean* v. *Fleming*, 96 U. S., 245; *Consolidated Ice Co.* v. *Hygea Distilled Water Co.*, 151 Fed., 10; *Bissell Chilled Plow Works* v. *T. M. Bissell*, 121 Fed., *supra; LaPage Co.* v. *Russian Cement Co.*, 51 Fed. Rep., 941.

Defendant urges on page 15 of his brief that plaintiff has been guilty of laches in permitting defendant to carry on his business under the name of the French Ice Cream Co. for a period of two years before taking any action and therefore it is not entitled to any relief because of its delay to take action. It is a strange plea coming from the person who has been guilty of the fraud that because the injured one has seen fit not to bring him into court sooner he shall not now be held to answer for his wrongful acts against plaintiff. Equity will follow the law and adopt the statute of limitations in a proper case as the rule to be applied in case of laches, and if this case be considered one of a single act of fraud, and not a continuing series of constructively fraudulent acts, as it is, to say the least, the time within which the action would be barred is four years from the discovery of the fraud (Section 4982, Revised Statutes). Suffice it to say that upon any proper view of the case the defendant is in no position to invoke the doctrine of laches in view of his own conduct and the further fact that the plaintiff has in the opinion of the court, been reasonably diligent in bringing its action. Bispham's Equity, Section 260.

Defendant also complains that he was never served with notice prior to the bringing of this action that the use of the name was misleading the public and therefore the action should be dismissed. He cites the case of *Cincinnati Vici Shoe Co.* v. *Cincinnati Shoe Co.*, 7 N. P., 135, wherein the General Term of the Superior Court of Cincinnati expresses a doubt, on page 137, speaking through Judge Rufus B. Smith, whether a cause of action is stated where there is no allegation of an intent to deceive on the part of the defendant. But in the case at bar there are several averments of an intent to deceive and defraud on the part of the defendant. On page 5 of the amended petition occurs this language:

"Plaintiff says that all of said acts on the part of defendant were and are being done *with intent to defraud* the plaintiff out of its lawful trade and patronage and the profits thereof, and are a fraud on the public and the plaintiff's customers," etc.

The case in 68 Hun., p. 515, cited by counsel for defendant, is a trade-mark case and a reading of that case will disclose that the principle there laid down does not apply to the case at bar. · The case in 128 U. S., 598, *Goodyear Rubber Glove Mfg. Co.* v. *Goodyear Rubber Co.,* is fully distinguished and by implication, at least, overruled by the later case of *Lawrence Mfg. Co.* v. *Tennessee Mfg. Co.,* 138 U. S., 537. Prior to the decision of the case last cited, the doctrine of unfair competition had scarcely received any sanction in the United States Supreme Court, and it was by this last decision announced by Chief Justice Fuller that the doctrine may be said to have been finally established in the United States and as based upon fraud on the plaintiff as well as on the public.

The case cited by defendant in 165 Fed., 624, "Don Caesar" and "Don Carlos," was a trade-mark case in which it was held that there was no infringement. This was not a case of unfair competition.

The case in 41 O. S., 127, *Brill* v. *Singer Mfg. Co.,* failed be- · cause at that time the doctrine of unfair trade had not been fully, developed and for the much better reason that the court found as a matter of fact (quoting from pp. 139-140):

"No purchaser of ordinary intelligence would be likely to be deceived as to the manufacturer or the place where manufactured, and the word 'Singer,' though used on their cards, circulars and newspaper advertisements, *nowhere* appears upon the machine manufactured by the Williams Manufacturing Co."

Many of the cases cited by counsel for defendant are cases in which an injunction was sought on the ground that a *trademark* was being infringed. Of course, where it appeared that a different word or mark was used, although similar to plaintiffs, an injunction was refused. But the principle applicable to cases of unfair trade is different from that involved in an infringement case. In unfair trade, as has been heretofore stated, it is not the adoption of the *same* word or mark that constitutes

the objection, but of *similar* words or marks calculated to deceive a person of ordinary intelligence. The doctrine of unfair trade is invoked, where and *because the plaintiff has no trademark to protect.*

Defendant urges on pages 21 and 22 of his brief that deception on the public is not ground for an injunction. While this may be true nevertheless if the plaintiff may be injured or if the acts of the defendant are calculated to injure plaintiff, an injunction will be granted, and it will not be refused because at the same time these same acts tend to injure the public.

A case very similar to the one at bar was decided by Judge Bigger, of the Franklin County Common Pleas Court, and the court believes that what is there stated by the learned judge concerning the defendant is equally applicable to the defendant in the case at bar. *Ironsides Co.* v. *Ironsides Chemical Co.,* 1 N. P.—N. S., 346.

For the reasons given the defendant will be perpetually enjoined from using the word "French" in connection with his ice cream business within the limits of the city of Cincinnati and Hamilton county, and will be adjudged to pay the costs of this action.